THE STATE ex rel. BROWN, Collector of Lincoln County, Appellant, v. A. C. WILSON, Appellant.

### Division One, January 14, 1909.

1. **DRAINAGE DISTRICT**: Organization: Collateral Attack. The statute (R. S. 1899, sec. 8331), in express terms gives the county court jurisdiction of a proceeding to incorporate and organize a drainage district, and authorizes it to hear and determine all questions as to the validity of the proceedings, whether legal or jurisdictional, and to render a "final and conclusive judgment" confirming the assessment of benefits and incorporating the district. A landowner who was a petitioner for the organization of the district or was properly served, had his day in court then to object to the validity of the organization and assessments, and when subsequently sued for unpaid assessments cannot object to the validity of the incorporation, for that is a collateral attack.

2. ———: ———: Description. A petition for a drainage district which describes and fixes the boundary lines of the proposed drainage district by metes and bounds and by describing the lands affected, and describes the ditches and levee by giving the starting points, general course and termini, sufficiently describes both the district and the levee.

3. ———: ———: Notice: Collateral Attack: Presumption: Inferior Court. Although the record fails to show that the clerk of the county court caused notice of the proceedings to organize a drainage district, to be given, stating when and in what court the petition praying for its organization was filed, and stating the starting point, route, termini and general direction of the proposed levee and ditches, the boundaries and name of the proposed district, and at what term of court the petitioners would ask for a hearing, etc., it will be held in a

collateral attack upon the validity of the organization of the district, in the absence of a showing to the contrary, that the recitals in the notice were in substantial compliance with the requirements of the statute. The rule of law that the records of courts of limited and inferior jurisdiction, not proceeding according to the course of the common law, must affirmatively show all the facts the statute requires to be stated, does not apply to such a case, for the law invests the county court with authority to find the existence of those facts before it can acquire jurisdiction, and it will be presumed, in a collateral attack, that it did pass upon them and find them to exist.

4. ———: ———: **Commissioners' Report: Aggregate Damages.** The commissioners' report in the drainage district is not fatally defective because it does not state the aggregate amount of damages that all the lands affected will sustain, if it states separately the amount of damages to each tract. That is certain which may be made certain.

5. ———: ———: ———: **All Lands Benefited or Damaged.** A report of the commissioners which does not state whether or not the proposed drainage district embraces all the land that will be damaged or benefited by the proposed improvements, but does state the district embraces a certain number of acres, giving the names of the various owners, and that all will be reclaimed or protected from overflow by the proposed levee and ditches, falls short of complying with the statute, but the defect is an irregularity, and not jurisdictional, and even if jurisdictional it is presumed, in a collateral attack, to have been investigated and adjudicated by the judgment of the county court.

6. ———: **Assessment: Collateral Attack.** Where the first assessment of benefits received and damages sustained by the land affected by the proposed levee and ditches was asked for in the petition for the organization of the drainage district, and was made by the commissioners appointed in pursuance thereto, and was confirmed by the same judgment of the county court which incorporated the district, the judgment is an entirety, and the validity of the assessments is not subject to collateral attack.

7. ———: **Subsequent Assessment: Notice: Res Adjudicata.** Even though it be conceded that the commissioners acted outside and beyond the scope of their authority in contracting debts in the construction of the levees and ditches in the drainage district, yet if in their supplemental petition they asked for an additional assessment to meet such indebtedness, and the county court in its judgment authorized an assessment which was within the amount the lands were found by the original report and the confirmation thereof to be benefited, and on appeal to the circuit court and a trial *de novo* that assessment

State ex rel. v. Wilson.

was sustained, and that judgment was not appealed from, the validity of the assessment is *res adjudicata*, whether or not the complaining landowner had special notice that the supple-mental petition had been filed or that an appeal had been taken to the circuit court. If the landowner was once in court at the time the judgment was entered incorporating the district, he was there for all purposes thereafter until the matter of constructing and paying for the ditches and levees was con-cluded, and was not entitled, under section 8337, Revised Stat-utes 1899, to any other notice that a supplemental assessment would be made.

8. ————: ————: **By Installments.** The statute contemplated that assessments within the amount the lands are benefited, as found in the first instance, will be made from time to time, by installments, as may be needed to complete the proposed improvements. So long as the aggregate of those installments is within the amount of benefits which it was found by the commissioners' report the lands were benefited, they cannot be said to be the taking of the landowner's property without just compensation.

9. ————: **Assessments: Taxation: Certification: Back Tax-Book: Irregularities.** Under the present liberal statutes of this State, when the assessor makes out his assessor's books, juris-diction attaches and the rest of the proceedings are purely di-rectory; and mere informalities in making the assessments of property or charges for taxes thereon, or in the tax lists, or on account of the assessments not being made or completed within the time required by law, or in making or certifying the back tax-book, do not affect the validity of the tax, and are not de-fenses in a suit to collect back taxes.

10. ————: ————: **Suit By Collector.** The collector of the revenue of the county is the proper person to bring suit in the name of the State to collect a delinquent assessment made for paying the costs of constructing levees and ditches of a drainage district.

11. ————: ————: **Limitations.** The Statute of Limitations, in a suit for delinquent benefit assessments imposed by the county court on behalf of a legally organized drainage district, begins to run on the day they become delinquent, and not on the day they become due. So that an assessment that became due and payable on the first day of January, 1895, became delinquent on January 1, 1896, and a suit begun on December 28, 1900, was not barred by the Statute of Limitations.

12. ————: ————: ————: **Beginning of Suit: Filing Peti-tion.** A suit is begun when the petition is filed with the clerk. So that where a suit for back taxes was filed on December 28, 1900, for taxes due January 1, 1896, but summons was not is-sued or defendant did not enter his appearance until April 1, 1901, the suit was not barred by limitations.

Appeal from Pike Circuit Court.—*Hon. D. H. Eby,*
Judge.

REVERSED AND REMANDED (*with directions*)

*O. H. Avery, W. A. Dudley* and *J. D. Hostetter*
for plaintiff-appellant.

(1)  Defendants make a collateral attack on the
judgment. Lovett v. Russell, 138 Mo. 477.  The county
court had express authority given by the statute to
pass on the sufficiency of the initial notice and "con-
tinue the case for want of sufficient notice or other
good cause" (fourth section), to decide all questions
as to the "validity of the proceedings" whether "legal
or jurisdictional", to pass upon the necessity for any
modification of the report of the commissioners in
"any respect" and render a "final and conclusive"
judgment confirming the assessments and incorporat-
ing the district. R. S. 1899, sec. 8331.  Under these
circumstances all "jurisdictional requisites" will be
conclusively presumed to have been complied with.
Lingo v. Bufford, 112 Mo. 149; Union Depot Co. v.
Frederick, 117 Mo. 138; Belk v. Hamilton, 130 Mo.
292; State v. Smith, 119 Mo. App. 542.  But this is
not all.  The law (14th section) expressly requires
that the party objecting shall do so on the day set for
hearing, and that he shall do so by "remonstrance
verified by affidavit" and shall set forth therein his
objections whether "legal or jurisdictional."  All the
objections here urged are either legal or jurisdictional.
These defendants were in court both as petitioners and
by notice.  What excuse do they now offer for hav-
ing failed to object when they had their "day in court"
or for objecting without a plea in similar form and
substance to that required by law?  St. Louis v.
Brown, 155 Mo. 545; Kansas City v. Duncan, 135 Mo.
571.  (2)  The county court was vested by law with

jurisdiction to levy all of the assessments authorized by this drainage act. It, in other words, had jurisdiction of the subject-matter. Defendants by their remonstrance gave jurisdiction of their persons by entering their unlimited appearance, thus waiving all questions of notice. Allen v. Welch, 125 Mo. App. 278. The question, then, necessarily came before the county court and the circuit court as to the legality of the indebtedness created by the old board and as to the power of the county court to levy an assessment to pay it. On the trial of those questions it might have been urged that Wilson and Dumphy promoted the proceedings up to that hour, that they stood by and saw their lands improved by the creation of this debt, and were now estopped to prevent its payment. State ex rel. v. Mastin, 103 Mo. 508. It might with propriety also have been pointed out that the rights of way having already been acquired by deeds, the proceedings under the twentieth section were not an exercise of the law of eminent domain, but were referable solely to the taxing power. Keith v. Bingham, 100 Mo. 300. And that, therefore, the same strictness as to notice was not required to constitute due process of law under the Constitution. That there is a wide distinction between the powers exercised under section 14 and section 20 of this Drainage Act. The first establishes the limits of the district, fixes the proportion in which each tract shall bear the burdens of the proposed work, estimates the benefits and damages and condemns the right of way, having thereafter only the exercise of simple taxing power and power to build the works already proposed. Under the first steps the fullest provisions for notice and hearings were made. Defendants, with full knowledge of the possibility that future summary assessments might be required to complete the proposed work, based on the ratio of benefits reported and then before them, made no objection. Viewed in this

light, there is no possible constitutional objection to the summary levy authorized by the twentieth section. Pav. Co. v. French, 158 Mo. 534, 181 U. S. 324; St. Joseph v. Farrell, 106 Mo. 437; Keith v. Bingham, 100 Mo. 307; Mound City Land & Stock Co. v. Miller, 170 Mo. 240; State ex rel. v. Holt Co., 135 Mo. 533. Nor is it true that all of the benefits were absorbed by the first assessment. Counsel are misled by the terms used by the commissioners in apportioning the $12,247.17 required for the work, against the several tracts of land, but keeping in view the fact that they were levying this money from benefits and that they in the same paper reported the gross benefits at $87,500 or more, their error becomes apparent. Nor in view of the statute is it true that these gross reported benefits are unavailable for future assessments. The commissioners and county court have duly fixed the ratio of benefits among the various tracts and the assessment thereafter is as simple as the front-foot rule established throughout this country and affords no more occasion for notice than does a levy under that rule or under the general revenue laws. In this view, Norwood v. Baker, 172 U. S. 269, and similar cases, have no applicability whatever. These and other considerations doubtless were urged in the presence of defendants in the county court. They naturally prevailed. Defendants acquiesced and the work of improving their lands according to the plans inaugurated and put through by them went on. They by all good reason and authority and in justice are and ought to be estopped from raising any question as to the validity of these taxes. No captious reason should be sought or heard to relieve a man who inaugurates a plan by which his neighbors are forced to improve his property and when called upon to take his own vermifuge comes up with an *ex post facto* cry of unconstitutional. State ex rel. v. Mastin, 103 Mo. 508; 28 Cyc. 1172, 1173; Brick & Terra Cotta Co. v. Hull,

49 Mo. App. 433; Cross v. Kansas City, 90 Mo. 13. (3) On the points already made all of the assessments were legal and valid. Upon a valid assessment, all subsequent proceedings are directory. State ex rel. v. Phillips, 137 Mo. 259; State ex rel. v. Harper, 83 Mo. 670; State ex rel. v. Bank, 120 Mo. 161; Thomas v. Chapin, 116 Mo. 396; State ex rel. v. Hurt, 113 Mo. 90; State ex rel. v. Miller, 116 Mo. 399; State ex rel. v. Bank, 144 Mo. 381; R. S. 1899, secs. 9179, 9329; State ex rel. v. Carr, 178 Mo. 229. The doctrine of these cases is that proof of a valid assessment, its entry in the tax book and failure of the taxpayer to pay it, makes out a good case—one which mere neglects of officials, delays, irregularities or omissions will not defeat. The doctrine of these cases and statutes destroys the force of the whole brood of objections. of the character urged in points 13 to 19 inclusive, of defendants' brief. Aside from the curative sections in our revenue laws, the twenty-seventh section of this Drainage Act proclaims the remedial character of the act and demands a liberal construction of its provisions, for the promotion of its beneficent purposes. (4) The county collector is obviously the party to sue for the taxes in the form of the proceedings in this case. The assessments if not paid when due are to be certified to the county clerk who shall enter the same in the tax lists; this tax list, the tax book, is delivered to the collector and "shall be collected in the same manner that State, county and town, township taxes are collected." R. S. 1899, secs. 8332, 9194; State ex rel. v. Angert, 127 Mo. 456. (5) The first assessment was payable January 1, 1895, and the second July 1, 1895. Both dates occurred more than five years before December 28, 1900, the date of filing suit, and. if the statute is to run from the date these assessments were payable, then undoubtedly the verdict of the lower court is not erroneous, but an examination of the statute governing

such cases, we think will convince the court that the lower court was in error in deciding that these assessments were barred by the Statute of Limitations. R. S. 1899, sec. 8332, is a part of the law creating these drainage districts, and it is at once apparent therefrom that taxes accruing thereunder are assessed and collected in the same manner and by the same proceedings as general taxes. This section requires that unpaid assessments be certified by the levee commissioners to the county clerk, and that same be entered in the tax list next thereafter to be made. The delinquent tax list of these two installments, the first and second, was not filed in the office of the county clerk until July 15, 1896. It is certainly evidenced from sec. 9291, R. S. 1899, that even though the assessment was due the first day of January, 1895, under no circumstances did it become delinquent until the first day of January, 1896, and the second assessment not being due until July 1, 1895, would not under the provisions of this law become delinquent until the first day of January, 1896. State ex rel. v. Carr, 178 Mo. 229. The court found that the petitions were both filed on the 28th day of December, 1900, with the clerk of the circuit court. This certainly under the rulings of the court was a commencement of the suit. Lumber Co. v. Wright, 114 Mo. 326; McGrath v. Railroad, 128 Mo. 1. (6) In the suit against A. C. Wilson et al. the court only finds taxes due on 101.41 acres, the east side of lot 8, and gives as a reason for not assessing the balance of lot 8, the sixty acres on the west side, that this west side had not been duly returned and certified as delinquent. The court finds that the levy or assessment had been properly made; finds that the taxes had not been paid and were due, and this is all that it is necessary to find to authorize a judgment for the amount. Sec. 9291, R. S. 1899; State ex rel. v. Bank, 144 Mo. 385; Thomas v. Chapin, 116 Mo. 399; State ex rel. v. Davis, 131 Mo. 457.

*Peter T. Barrett* and *Geo. W. Emerson* for defendant-appellant.

(1) The original petition praying for the organization of the drainage district should allege that the petition was signed by the "adult owners of more than one-half of the lands" within the district proposed to be organized, representing in area more than one-half of the lands to be reclaimed, benefited, affected, or wet. These facts should appear upon the face of the proceedings in the county court. They are jurisdictional requisites, and the failure of the proceedings in the county court to show these facts renders the organization of the Cap-Au-Gris Drainage and Levee District illegal and void. R. S. 1899, secs. 8319, 8322, 8326 (6th subd.), 8329; Whitley v. Platte County, 73 Mo. 30; Railroad v. Young, 96 Mo. 39; Ruggles v. Collins, 45 Mo. 353; St. Louis v. Clemens, 43 Mo. 395. This is especially true of proceedings had in a court of inferior or limited jurisdiction. Harris v. Hunt, 97 Mo. 574; Rahland v. Railroad, 98 Mo. 180; Frost v. Leathermann, 55 Mich. 33; Township Whiteford v. Monroe Probate Judge, 53 Mich. 130; Macey v. Carter, 76 Mo. 494; Fisher v. Davis, 27 Mo. App. 321. Jurisdiction of the person can be conferred by consent, but not of the subject-matter. Want of jurisdiction cannot be waived. Commissioners v. Griffin, 134 Ill. 332; Highway Commissioners v. Smith, 217 Ill. 250. (2) The original petition should give a description of the "starting point, route and terminus of the proposed levee" and the "starting point, route and terminus of the proposed drainage district." These are jurisdictional requisites which must appear upon the face of the proceedings. Sec. 2, Laws 1893, p. 188 (R. S. 1899, sec. 8319); Newton County Drainage Co. v. Nofsinger, 43 Ind. 566. (3) The record of the county court on the original petition should show that the court found that the "proposed levee and drain were

necessary or would be useful for the drainage of the lands proposed to be drained thereby for agricultural purposes." These are jurisdictional requisites and should appear upon the face of the proceedings. Sec. 5, Laws 1893, pp. 189-190 (R. S. 1899, sec. 8322); Caldwell v. Harrison, Tp. Trustees, 2 Ohio Cir. Ct. 10; State v. Curtis, 86 Wis. 140. (4) The record of the proceedings in the county court does not show that the county clerk caused a notice to be given stating "when and in what court the petition praying for the organization of the Cap-Au-Gris Drainage and Levee District was and is filed, the starting point, route, termini and general description of the proposed work, the boundaries and name of the proposed drainage district and at what term of said court, when and where the petitioners will ask a hearing of said petition." The court only found that "notice of the filing of said petition" was given, but does not find that such notice expressed the other facts as required by section 3, Laws 1893, page 189 (R. S. 1899, sec. 8320). These are jurisdictional requisites and the failure of the proceedings had in the county court to show the same affirmatively renders said proceedings illegal and void. Boynton v. People, 155 Ill. 66; Conway v. Campbell, 38 Mo. App. 473; Hyde v. Goldsby, 25 Mo. 29; Railroad v. Young, 96 Mo. 42; Harness v. Cravens, 126 Mo. 233; St. Louis v. Clemens, 45 Mo. 404; Brosmer v. Kelsey, 106 Ind. 504; Drainage Commissioners v. Griffin, 134 Ill. 330; Eaton v. St. Charles County, 8 Mo. App. 177; Strachan v. Brown, 39 Mich. 168; Highway Commissioners v. Smith, 217 Ill. 250. (5) The failure of the commissioners in their report to the county court to state the "aggregate amount of injuries to lands by the proposed work" rendered ineffectual all proceedings. This is a jurisdictional requisite and should appear upon the face of the proceedings. 4th subdiv., sec. 9, p. 191 (R. S. 1899, sec. 8326); St. Louis v. Clement, 43 Mo. 404; Whitley v. Platte County, 73

Mo. 30.  (6) The failure of the commissioners in their report to the county court to "state whether the proposed district, as set out in the petition (original) filed, would embrace all the lands that might be damaged or benefited by the proposed work" or to state "what additional lands would be benefited or damaged, and the amounts of the benefits or damages, in the same manner as though such lands were included in such original petition," renders that and all subsequent proceedings ineffectual.  This being a jurisdictional requisite should appear on the face of the proceedings.  6th subdiv., sec. 9, Laws 1893, p. 191 (R. S. 1899, sec. 8326); Heidelberg v. St. Francois Co., 100 Mo. 74.  (7) The commissioners having failed to report to the county court "whether the starting point, route and terminus of the proposed levee," and "whether the starting point, route and terminus of the proposed drainage district" and the "proposed locations thereof was in all respects proper and feasible," and "if not, what was," rendered all subsequent proceedings ineffectual.  These are jurisdictional requisites and should appear on the face of the proceedings.  1st subdiv., sec. 9, Laws 1893, p. 191 (R. S. 1899, sec. 8326); Railroad v. Young, 96 Mo. 42; St. Louis v. Clement, 42 Mo. 404; Null v. Zierle, 52 Mich. 540; Gross v. Zierle, 52 Mich. 542.  (8) The failure of the commissioners in their report, and the county court in its findings, to definitely fix the boundaries of the drainage district and to state the "starting point, route and terminus of the levee" and the "drainage district," precluded the commissioners from proceeding to lay out the district.  Sec. 12, Laws 1893, p. 192 (R. S. 1899, sec. 8329); sec. 14, Laws 1893, p. 193 (R. S. 1899, sec. 8331); Null v. Zierle, 52 Mich. 540; Gross. v. Zierle, 52 Mich. 542.  (9) The action of the commissioners (Trescott, Killam and Magruder), and their predecessors in office, in contract-

ing an indebtedness amounting to $10,899.73, over and above the amount of the first assessment levied by the county court, and the acts of the circuit and county courts of Lincoln county in ordering the second assessment to pay said indebtedness, are contrary to the express prohibitions of law and are illegal and void. The second or supplemental assessment is not a lien against the lands of these defendants and cannot be enforced in these causes. Sec. 18, Laws 1893, p. 195 (R. S. 1899, sec. 8335); sec. 21, Laws 1893, p. 195 (R. S. 1899, sec. 8338); Winkelman v. Moredock Ivy Landing Drainage District No. 1, 170 Ill. 37; Drainage Commissioners v. Kinney, 233 Ill. 67; Ahrens v. Drainage District, 170 Ill. 262; Bank v. Union Dist. No. 1, 82 Ill. App. 627; Bank v. Drew, 93 Ill. App. 630, affirmed 191 Ill. 186; Vandalia Levee Co. v. Hutchins, 234 Ill. 34. Contractors are bound to take notice of the restrictions of the statute. State ex rel. v. Winklemann, 96 Mo. App. 223. (10) Section 20, Laws 1893, page 195 (R. S. 1899, sec. 8337), under which the second or supplemental assessment was attempted to be levied, provides a further assessment . . . may be made under the order of the court, or presiding judge thereof, without notice. Said action, inasmuch as it provides for assessments upon real estate for drainage purposes without notice to the owners thereof, so that they may in some way, if they choose, contest the validity or the amount of such assessments, is void, as being in conflict with the constitutional inhibitions against taking private property "without due process of law" and "the taking of private property for public use without just compensation." Sec. 1, 14th Amendment U. S. Constitution; sec. 30, art. 2, Constitution of Missouri; sec. 21, art. 2, Constitution of Missouri; Philadelphia v. Miller, 49 Pa. St. 440; Campbell v. Diviggins, 83 Ind. 473; Rutford's Case, 72 Pa. St. 82; Butler v. Supervisors, 26 Mich. 22; Thomas v. Gain, 35 Mich. 155; Norwood v. Baker, 172

U. S. 269. (11) The circuit and county courts of Lincoln county had no authority to order a levy of the second or supplemental assessment of taxes against the lands of these defendants, when the reports of the commissioners and the record proceedings of the county court showed that the first assessment of levee taxes against said lands were in amounts equal to the benefits shown by said reports and records; and that the entire amount of the second assessment of taxes was over and above the amounts of benefits to said lands. Levee taxes are limited to the amounts of the benefits. Said second or supplemental assessment is illegal and void. 5th and 6th subdiv., sec. 9, Laws 1893, p. 191 (R. S. 1899, sec. 8326); 3d, 4th and 5th subdivs. (of repairs), sec. 9, Laws 1893, pp. 191, 192 (R. S. 1899, sec. 8326); sec. 10, Laws 1893, p. 192 (R. S. 1899, sec. 8327); sec. 11, Laws 1893, p. 192 (R. S. 1899, sec. 8328); sec. 12, Laws 1893, p. 192 (R. S. 1899, sec. 8329); sec. 13, Laws 1893, pp. 192, 193 (R. S. 1899, sec. 8330); sec. 20, Laws 1893, p. 195 (R. S. 1899, sec. 8337); Havana Township Drainage District v. Kelsey, 120 Ill. 482; Badger v. Inlet Drainage District, 141 Ill. 540. The powers of the commissioners and of the courts are limited and defined by the Act of 1893. Drainage District v. Daudt, 74 Mo. App. 579; Ahrens v. Drainage District, 170 Ill. 262; Winkelman v. Drainage District, 170 Ill. 37. The second assessment of levee taxes being in excess of the benefits conferred, and not being predicated upon benefits to the lands of these defendants, was to the extent thereof an assessment without benefits, is null and void, and amounts to the confiscation of the property of these defendants and the taking of same "without due process of law" and the "taking of private property for public use without just compensation." Sec. 1, 14th Amendment U. S. Constitution; sec. 30, art. 2, Constitution of Missouri; sec. 21, art. 2, Constitution of Missouri; Norwood v. Baker, 172 U. S. 274. (12) The

Drainage Act of 1893 having been adopted from the Illinois statutes by the Legislature of this State, the Legislature not only adopted the act, but also the constructions placed upon it by the highest courts of that State. Skouten v. Wood, 57 Mo. 380; Kimball v. Davis, 52 Mo. App. 194; Skrainka v. Allen, 76 Mo. 384; 23 Am. and Eng. Ency. Law (1 Ed.), 432; State v. Chandler, 132 Mo. 155. (13) The alleged delinquent taxes of defendant Dumphy as to tract No. 2, not having been entered in the tax book or tax lists for the years 1896, 1897 and 1898, and not having been authenticated with the seal of the county court and delivered by the clerk to the county collector, the county collector had no right to collect said taxes, which are mere illegal exactions, which the collector was not authorized to collect and which the defendant was not under obligation to pay, renders it of no official validity. Sec. 15, Laws 1893, p. 194 (R. S. 1899, sec. 8332); sec. 9194, R. S. 1899; Burke v. Brown, 148 Mo. 309; Railroad v. Apperson, 97 Mo. 300. And if the county collector should report to the county court the delinquent list, such a report would be unauthorized and invalid, and the county court would be without jurisdiction and powerless to act. Howard v. Heck, 88 Mo. 456. (14) The certificate of the county clerk to the alleged list of delinquent assessments of these defendants is not sufficient compliance with the statutes, in this, that it does not show that the county clerk entered said delinquent assessments in the tax lists for Lincoln county next thereafter, nor that the tax lists were corrected and adjusted, nor that he had made a fair copy thereof with the taxes extended therein, authenticated by the seal of the court, nor that he had delivered the same to the county collector. These are essential requisites before the county collector can proceed. It is his authority to act. The pretended list and certificate is not a tax book of Lincoln county for 1896. Sec. 15, Laws 1893, p. 194

(R. S. 1899, sec. 8332); R. S. 1899, sec. 9194; Burke
v. Brown, 148 Mo. 309; Railroad v. Apperson, 97 Mo.
300; Howard v. Heck, 88 Mo. 456. It must also ap-
pear that the tax lists were verified by the oath of
the assessor. R. S. 1899, sec. 9188; State ex rel. v.
Schooley, 84 Mo. 447; State ex rel. v. Cook, 82 Mo.
185; Pike v. Martindale, 91 Mo. 268; State ex rel. v.
Seahorn, 139 Mo. 583. (15) The back tax book for
1899 is not a sufficient compliance with the statutes,
in this, that it does not appear that the county court
examined and compared the delinquent lists and cor-
rected same and caused the list so corrected to be
certified and filed in the office of the county clerk;
that the clerk made the said corrected lists into a
"back tax book" and delivered the same to the county
collector. The alleged "back tax book" for 1899 is
not certified to at all. Secs. 9290, 9292, 9300, R. S.
1899; Burke v. Brown, 148 Mo. 309. (16) The alleged
delinquent assessments, if they were delinquent, should
have been entered in the back tax-books for 1897.
Sec. 9300, R. S. 1899. (17) The first, second, third
and fourth installments of the first assessment fall-
ing due respectively January 1, 1895, July 1, 1895,
January 1, 1896, and July 1, 1896, should have been
certified to by the commissioners when they were due
and unpaid to the county clerk. The failure of the
commissioners to so certify, until July 15, 1896, pre-
cluded the enforcement of said installments against
the lands of these defendants. Sec. 15, Laws 1893, p.
194 (R. S. 1899, sec. 8332). The same objection ap-
plies to the first installment of the second assessment.
It was due September 1, 1898, but was not certified
to the clerk as due and unpaid until May 8, 1899, and
May 15, 1901. (18) The commissioners having failed
to make any certification whatever to the county clerk
of the alleged delinquency of the first installment of
the second assessment, due September 1, 1898, as to
tract No. 2 of defendant A. C. Wilson's lands, the

court correctly found on the fifth count of plaintiff's petition for said defendant as to said item (tract No. 2) of the first installment of the second assessment. Sec. 15, Laws 1893, p. 194 (R. S. 1899, sec. 8332). The said item of the first installment of the second assessment not having been returned delinquent by the commissioners and not having been entered by the clerk on the tax lists next thereafter, prevented enforcement of said item of said installment of said assessment. Sec. 15, Laws 1893, p. 194 (R. S. 1899, sec. 8332). (19) The first assessment was levied by the county court on the 26th day of September, 1894, and made payable in four installments of 25 per cent each, on January 1, 1895, July 1, 1895, January 1, 1896, and July 1, 1896, but the suits against Wilson and Wilson et al. were not filed until December 28, 1900. The first and second counts in said suits being for the first and second installments, respectively, of said assessment, the circuit court properly held that said first and second installments were barred by the Statute of Limitations on the 28th day of December, 1900. Sec. 15, Laws 1893, p. 194, lines 1-6 and 35-42; R. S. 1899, sec. 8332; R. S. 1899, sec. 9313; R. S. 1899, sec. 8334 (sec. 17, Laws 1893, p. 194); People ex rel. v. Clayton, 115 Ill. 150; Chauncey v. Wass, 35 Minn. 14. (20) The third count in the Wilson and Wilson et al. suits was for the third installment of the first assessment, which was made due and payable January 1, 1896, and Wilson, who was a non-resident of this State, not being served either personally, or by publication, voluntarily entered his appearance on April 3, 1901. Said suits, although filed on December 28, 1900, as to said third count, cannot be held to have been instituted until April 3, 1901, the date of said appearance, which was more than five years after the first day of January, 1896, and was properly so held by the trial court. R. S. 1899, sec. 9313; R. S. 1899, sec. 566; R. S. 1899, sec. 4273; White v. Reed, 60 Mo.

380; Walker v. Towner, 29 Fed. Cases 17089; 25 Cyc., 1294, 1295 and 1297a. (21) The circuit court erred in not permitting defendants to show the terms of the contract under which they became petitioners for the establishment of the new levee district in controversy, to-wit: that it was agreed between defendants on the one hand (owners of the levee already built and to form a part of the proposed new levee) and the promoters of the new district, that whatever costs might be assessed against defendants for the new levee should and would be reduced by the value of defendants' old levee at the price per cubic yard of the cost of making the new levee. R. S. 1899, sec. 4487; R. S. 1899, sec. 4490; Kansas City to use v. Riedenour, 84 Mo. 253; Green v. Conrad, 114 Mo. 670; Eyermann v. Zeppenfeld, 6 Mo. App. 581. A lot-owner, when sued on a special tax bill, may show that work was done imperfectly, or that it was not done according to contract. Creamer v. Bates, 49 Mo. 523. (22) Defendants' signing the original petition does not estop them from questioning the legality of the second assessment. Steckert v. East Saginaw, 22 Mich. 111; Badger v. Drainage District, 141 Ill. 540; Highway Comrs. v. Smith, 217 Ill. 250; Culver v. People, 161 Ill. 94; Drainage Comrs. v. Griffin, 134 Ill. 330; Drainage District No. 1 v. Dandt, 74 Mo. App. 579; Newton County Drainage Co. v. Nofsinger, 43 Ind. 566; In re Sharp, 56 N. Y. 257; Taylor v. Burnap, 39 Mich. 739; Loan Assn. v. Topeka, 20 Wall. 655; School District v. Dorton, 125 Mo. 439; Nicholas v. Bank, 55 Mo. App. 81; Gillett v. McLaughlin, 69 Mich. 547; Scott v. Brackett, 89 Ind. 413; Carpenter v. Lathrop, 51 Mo. 483; McGreedy v. Sexton, 29 Iowa 352. (23) The judgments of the county and circuit courts confirming the second assessment, on the report of the commissioners, is not *res adjudicata* upon any question in these cases, because the court acted without jurisdiction. Boynton v. People, 155 Ill. 66; Vizzard

v. Taylor, 97 Ind. 90; Eaton v. St. Charles Co., 8 Mo. App. 177; 24 Am. and Eng. Ency. Law (2 Ed.), 718, 719; St. Louis v. Wiggins Ferry Co., 88 Mo. 615; Dailey v. Sharkey, 29 Mo. App. 518; Horn v. Co., 88 Mo. 469; Culver v. People, 161 Ill. 94; Town of Ottawa v. Walker, 74 Am. Dec. 121; Embury v. Conner, 3 N. Y. 511; In re Lange, 85 N. Y. 307; 25 Am. and Eng. Ency. Law (2 Ed.), 1226-1241; Dean v. Charleton, 99 Am. Dec. 205; People v. Wilson, 119 N. Y. 515; Payson v. People ex rel., 175 Ill. 267; Comrs. v. Griffin, 134 Ill. 332; Sturgeon v. Hampton, 88 Mo. 203; Drainage Comrs. v. Kinney, 233 Ill. 67; Bank v. Union Dist., 82 Ill. App. 627; Bank v. Drew, 93 Ill. App. 630, in 191 Ill. 186. (a) Said second assessment, being in excess of benefits, was illegal and void. (b) Said second assessment, being levied for an indebtedness previouly incurred, was illegal and void. (c) Judgment rendered on said second assessment was illegal and void. A void judgment is a nullity and may be attacked collaterally. Fithian v. Monks, 43 Mo. 502; Higgins v. Pelter, 49 Mo. 152; Ellison v. Martin, 53 Mo. 575. (24) Suits are brought in the name of the State at the relation of county collector. No authority is given the county collector to receive and receipt for taxes of this character by statute from which alone he derives his powers. When the court confirms the report of the commissioners the statute (latter part sec. 8331, R. S. 1899), declares the district to be a body corporate by the name mentioned in the petition with right to sue and be sued, adopt a seal, etc., and the order of the Lincoln county court declares "Cap-Au-Gris Drainage and Levee District" is a body corporate and has a right to sue. For what may it sue? Certainly for the money due, and these taxes, if due at all, must be due the body corporate, and suit should have been brought in name of the district and the proceeding would have been governed by the law for the collection of ordinary taxes except

as to the name of the plaintiff. If the district is not a body corporate, of course plaintiff cannot recover, and if the district is a body corporate, plaintiff cannot recover. If plaintiff recovers and taxes should be paid to collector, what shall he do with the money? Pay it to the county treasurer? Then upon whose order, check or warrant shall he disburse the same? The law has no answer to these questions, and its absence is a good reason for the conclusion that this plaintiff has no right in the matter.

WOODSON, J.—On December 28, 1900, the State of Missouri, at the relation of F. D. Brown, collector of the revenues of Lincoln county, instituted this suit in the circuit court of that county, against the defendant, to recover certain special taxes due the Cap-Au-Gris Drainage and Levee District, situate in Monroe township of said county, organized and existing under and by virtue of article V of chapter 122 of Revised Statutes of 1899.

The petition contained five counts, each based upon separate installments of taxes due.

There was a change of venue taken and the cause was sent to the circuit court of Pike county, where a trial was had without the intervention of a jury, which resulted in a judgment for defendant upon the first three counts and in favor of plaintiff on the remaining two. In due time each party filed his motion for a new trial, and, both being overruled, each appealed to this court.

The petition at great length and with great particularity states that the defendant and some thirty-five or more persons, owning about 3,500 acres of wet and overflowed lands in said township, were desirous of forming a drainage and levee district in order that the lands might be reclaimed from the waters; that in pursuance thereof they filed in the county court of said county a petition asking that they be incor-

porated into a drainage and levee district, as provided by said article, under the name of the Cap-Au-Gris Drainage and Levee District; that due notice was given to all interested parties of the filing of the petition, and the day upon which it would be heard by the court; that the court heard the case and found that the petition was in due form as required by statute, and that the district was necessary and feasible; that the court appointed commissioners to view the lands, to make report as required by law; that the commissioners qualified, viewed the land described in the petition, surveyed, made maps and plats thereof; stated the length, termini, course and general description of the ditches and levees to be constructed, and the probable cost of the construction and maintenance of same, together with the names of the owners of the lands located therein; that a majority of them had signed the petition; the number of acres in each tract and the description thereof, and the benefits and damages each would receive and sustain and the aggregate thereof. That upon the incoming of the report notice thereof was duly given when it would be considered, as required by the statute; that certain of the landowners filed remonstrances which were by the court taken up, considered and overruled; that the report was then taken up and considered by the court, modified and confirmed, as will be more fully stated later on; that an order was made and entered of record incorporating the district under the name and in the manner as prayed; and the commissioners were ordered to proceed to construct the levees and dig the ditches in the manner provided by law.

The answer, omitting formal parts, is as follows:

"Now comes defendant, A. C. Wilson, and for answer to plaintiff's petition filed in this cause and each and every count thereof, denies each and every allegation in said petition and each and every count thereof contained.

"Defendant further answering plaintiff's petition and every count thereof says that no sum has at any time been due upon plaintiff's said petition nor any count thereof, but that if any sum was at any time due upon the account sued on in this cause or in any count thereof the same accrued, was due and plaintiff's right of action accrued thereon more than five years before the filing of his petition herein; and plaintiff's cause of action and every count thereof, if any he ever had, was barred by the Statute of Limitation before the institution of this suit, and defendant pleads said Statute of Limitation as a special defense to plaintiff's petition and every count therein and to this cause of action.

"And defendant further answering says that no sum has at any time been due plaintiff from defendant herein upon the account and causes sued on herein, but that if any sums were at any time due thereon the same were for taxes against the real estate in plaintiff's petition described and that the said taxes, if any were at any time due thereon, were delinquent on the first day of July, 1895, the first days of January and July, 1896, and the first days of January and July, 1897; that plaintiff's action herein was commenced on the 24th day of November, 1902, and plaintiff's said action was not commenced within five years after said taxes became delinquent and that plaintiff's cause and right of action is therefore barred by the Statute of Limitations applicable to the collection of taxes on real estate, and defendant pleads said Statute of Limitation as a bar to plaintiff's petition and every count thereof and as a defense herein.

"And for his first special defense to the fifth count in said petition says that the sum therein sued for and sought to be charged against defendant's lands as a special lien is a part of a second assessment made in said Cap-Au-Gris Drainage and Levee District matter and was made upon the application and supple-

mental report of the commissioners of said district presented to the county court of Lincoln county at the November term, 1897. That prior to the making of said second assessment, to-wit, at the ——— term of said county court of Lincoln county, for the year, without notice.

"That said second assessment, a part of which is sought to be collected in said count, was made without notice to defendant, and defendant says that the Legislature of the State of Missouri had no right or warrant under the Constitution of the State to authorize or empower the making of such second assessment without notice to defendant, as was done in this instance, inasmuch as the making of such second assessment without notice is the taking of defendant's property without due process of law and the taking of private property for public use without compensation, in violation of Federal and State Constitution above mentioned and referred to in defendant's first special defense to said fifth count. Wherefore, the defendant says that said second assessment is null and void, and he asks judgment on said count for the reasons and cause herein stated.

"And the defendant for a third special defense to said fifth count says that the amount therein sought to be collected is an installment or part of a second assessment made in said Cap-Au-Gris Drainage and Levee District matter upon the application and report of the commissioners thereof, filed in the county court of Lincoln county, at the November term, 1897. That said commissioners in their said application and report asked for the making of said second assessment for the purpose of paying debts already contracted by them in excess of the first assessment made therein by the county court of Lincoln county, to the amount of ten thousand, eight hundred and ninety-nine and 73-100 dollars. That prior to the making of said second assessment the said commissioners had without order

or authority from any court or judge thereof contracted debts to the amount of ten thousand eight hundred and ninety-nine and 73-100 dollars in excess of the aggregate first assessed by said county court against all of the lands in said district, and that said second assessment was made upon their application for the payment of such debts so contracted by them as aforesaid, in excess of the said first assessment. And defendant says that said commissioners had no authority or warrant of law to 1894, there was ordered and made by said court a first assessment in said levee matter against the lands of this defendant on account thereof. That said first assessment so made by said county court in 1894 was for a sum equal to and covering the entire net benefits found and ascertained by the commissioners theretofore appointed which the lands of defendant would receive on account of such levee and drains, and that subsequent to the making of said first assessment and prior to the making of said second assessment no other or additional benefits have been found or ascertained to the defendant's lands. That all the benefits found to defendant's lands were exhausted and covered by said first assessment and that said second assessment was not made or predicated upon benefits to defendant's said lands and to the extent thereof is an assessment without benefits, null and void and amounts to the confiscation of defendant's property and the taking of same without due process of law in violation of the provisions of section one of the Fourteenth Amendment to the Constitution of the United States, and in violation of section thirty, article two of the Constitution of the State of Missouri. And is the taking of private property for public use without just compensation, in violation of article five of amendments to the Constitution of the United States, and section twenty-one, article two of the Constitution of the State of Missouri. Wherefore defendants ask judgment on said fifth count.

"Defendant for a second special defense to said fifth count says that the amount therein sued for is a part of a second assessment and supplemental report of the commissioners appointed therein. That the proceedings under which said Cap-Au-Gris Drainage and Levee District was attempted to be established was the act of the General Assembly of the State of Missouri for 1892, approved April 1, 1893, and found in the Laws for said year, beginning at page 188, and that the only authority or power for the making of said special assessment is found in section twenty of said act. That said section provides that such second assessment may be made under the order of the court or the presiding judge thereof; section 21 provides that the commissioners may not contract debts on account of said district in excess of assessment already made, and that the acts of said commissioners in so contracting said debts in excess of assessments made was *ultra vires* and void, and being void and without authority, the act of the court in making said second assessment to pay for same is also void and without authority and contrary to section 8338, Revised Statutes 1899. And having fully answered asks to be discharged with his costs."

The reply, omitting formal parts, is as follows:

"Now comes the plaintiff and replying to the answer of defendant hereinbefore filed denies each and every allegation of new matter therein contained in each and every count of said answer not hereinafter specially admitted or otherwise pleaded to.

"And plaintiff replying to the first special defense of defendant to the — count in plaintiff's petition admits that the sum sued for in said count and sought to be charged against defendant's land as a special lien is a part of the second assessment made in said Cap-Au-Gris Drainage and Levee District and was made on the application and supplemental report of the commissioners of said district, presented to

the county court of Lincoln county, Missouri, at its November term, 1897, after being fully heard by the court on said report and the remonstrances of defendant *et al.* But the plaintiff says that defendant ought not to be permitted in this court to make the defense sought to be made by his special defense to this court for reasons as follows: But plaintiff claims said assessment was made without notice to defendant.

"On the 18th day of October, 1893, there was filed in the county court of Lincoln county, Missouri, of said court, at the time having original jurisdiction of such matter, a petition signed by divers and sundry persons and among them this defendant, praying the court for the organization of a drainage district in Monroe township to be known as the Cap-Au-Gris Drainage and Levee District; that said petition was presented to the said court on said October 18, 1893, asking the organization and incorporation of said Cap-Au-Gris Drainage and Levee District, fully setting out the boundaries of said district, praying for the construction and execution of certain work therein fully set out and for the appointment of commissioners for that purpose as provided for by the provisions of an act of the General Assembly, entitled, 'An Act to provide for the organization of Drainage Districts and for the construction and maintenance and repair of ditches and levees in certain cases,' which said act was approved April 1, 1893, and that said petition, as aforesaid, was signed by defendant herein. That said county court permitted the filing of said petition, appointed commissioners in compliance with the prayer of said petition, and that afterwards, to-wit, the commissioners appointed by the court, having duly qualified, went upon the land and examined the same, made estimates and under the provisions of the law made their report; that all notices required by law were given by the county court, and that afterwards by a judgment of the county court of Lincoln county, said county court

at the time having complete jurisdiction of the subject-matter and the parties to the action, the report of the commissioners was confirmed and the prayer of the petitioners was granted, and the said Cap-Au-Gris Drainage and Levee District by order and judgment of the county court was established, organized and created, and the assessments for benefits and damages as reported by the commissioners was confirmed, and assessments duly and legally made by the said county court in its said judgment, a part of which said assessments so made and assessed, as aforesaid, are sued for in this action. Plaintiff therefore says that the said drainage and levee district having been organized and created with its present boundaries, and these assessments having been made at the request and on the petition of the defendant, that he is and ought to be forever estopped from making the defense in this special defense pleaded.

"Plaintiff replying .to defendant's second special defense to —— count of plaintiff's petition admits that the amount sued for in this count is a part of the second assessment made in said levee district upon the application and supplemental report of the commissioners appointed therein, after being fully heard and adjudicated by the court on said petition and a written remonstrance thereto signed by defendant and others; admits that the proceeding in which said Cap-Au-Gris Drainage and Levee District was attempted to be established was the Act of the General Assembly of 1893, and approved April 1, 1893, but says that defendant ought not to be permitted to make the defense he attempts to make to the assessment sued for in this count of plaintiff's petition because the said levee district was organized and established by the county court of Lincoln county, by its order and judgment after proceedings regularly had, and that the said order and judgment of the county court, which had jurisdiction of the subject-matter and the parties thereto at the

time it established said district and organized and established said district at the request and on the petition of the defendant, which said request and petition of the defendant was in writing and signed by the defendant, and filed in the county court of Lincoln county on the 18th day of October, 1893, and which said request and petition of defendant prayed the court to establish said district as it was established by the judgment and decree of said court and to make such assessments as were necessary to do the work in said petition described and to make the assessments in plaintiff's petition sued for in this case. Plaintiff therefore says that the judgment and decree of the county court of Lincoln county, establishing said district and making the assessments therein provided for, having been made at the request and on the written petition of the defendant, that he is estopped and should be estopped from making or attempting to make the defense he seeks to make in his second special defense to said —— count of plaintiff's petition.

"And plaintiff replying to the third special defense to the —— count of plaintiff's petition admits that the amount sought to be collected is an installment or part of the second assessment made in said Cap-Au-Gris Drainage and Levee District matter upon the application and report of the commissioners thereof, filed in the county court of Lincoln county at the November term, 1897. But plaintiff says that said assessment was made by the county court of Lincoln county upon the application and request of the commissioners of said district, and that said commissioners represented all the parties who own land in said district in official capacity, and that said commissioners on said day filed their report in the said county court asking that an additional assessment be made for the purpose of paying for the work done in said district, under the authority of the judgment of the county court hereto-

fore named, and at the request of the commissioners of said district, and also asked and prayed for an assessment necessary to complete the work in said district and to repair the levees, drains and ditches already made; that a remonstrance was filed in said court, and that defendant signed said remonstrance protesting against said additional levy, and that the report of the commissioners, together with the remonstrance signed by the defendant, came on to be heard in said county court and issue was joined thereon, and was by the county court heard and fully determined, and that the said county court heard the petition and remonstrance and the evidence introduced by both parties, by its order and judgment made an assessment of ten thousand, eight hundred and ninety-nine and 73-100 dollars; that the said court at the time it heard said report and remonstrance had complete jurisdiction to hear and determine the same, and did hear and determine the same and enter its judgment; that certain parties in said district, who, with defendant, were remonstrators, filed their affidavit in appeal, and the judgment and finding of the county court of Lincoln county was appealed to the circuit court of Lincoln county; that the said circuit court had appellate jurisdiction to hear and determine the said cause; that the said cause was regularly docketed and at the spring term, 1898, of said Lincoln County Circuit Court the cause came on to be heard before the said circuit court, and was tried *de novo* by the said circuit court, and that on the — day. of——A. D. 1898, the said circuit court, having heard said cause on the report of the commissioners and remonstrance and all the evidence introduced and the argument of counsel, and having at the time the full and complete jurisdiction of the subject-matter and the parties thereto, made and entered of record its judgment assessing the amount against the defendant's land in plaintiff's petition sued for and in defendant's third special defense complained of. Plain-

tiff denies that said assessment was made without notice to defendant. Plaintiff therefore says that defendant ought not to be permitted to make this defense in this court at this time; first, because the said assessment was made at his request and on his petition to the county court of Lincoln county; and, second, because the matter complained of in defendant's special defense was fully adjudicated by the county court of Lincoln county, and also by the circuit court of Lincoln county, which said court at the time they adjudicated the same had full and complete jurisdiction so to do, and that the said judgment of the said circuit court and of the county court of Lincoln county, so far as defendant is concerned, not being appealed from, was final, and that the matter therein heard and determined was the matter and things herein complained of by defendant in his third special defense, and that the interested parties then were the same parties that are interested now; that the defendant herein had the same interest at that time as he now has and was fully cognizant of the proceeding had at the time. Plaintiff therefore says that the matter and things complained of by defendant in his third special defense and sought by him to be adjudicated in this proceeding have heretofore in the circuit court of Lincoln county, and in the county court of Lincoln county, been fully and finally adjudicated and determined by the judgment of the said circuit court and county court, rendered at the time heretofore stated, and the said judgment not being appealed from is final and the defendant is bound thereby; and having fully replied to defendant's answer, plaintiff prays judgment in accordance with the prayer of the original petition in this case filed.''

In the circuit court this and two other cases were tried together. The petition in each contained from two to five counts. There were judgments rendered upon all of the counts, some of which were in favor of the respective plaintiffs, and the remainder were in

favor of the respective defendants. Cross appeals were taken and all of the proceedings of the trial court were presented in one bill of exceptions.

On account of the multitude of facts involved and the numerous legal propositions presented, it is absolutely necessary for a proper understanding and determination thereof that an extended statement of the testimony be set out, which consists largely of record and documentary evidence.

While a separate opinion must be written in each case, yet most of the issues of law and fact are common to all, and by disposing of the issues common to all in this case, the labor and opinions in the three cases will be greatly shortened.

It may be we have incorporated in the statement of this case some of the evidence which pertains exclusively to one or both of the other two cases which were tried with this one. The bill of exceptions which contains the evidence introduced in all three of the cases nowhere discloses from the offer what specific evidence was introduced in each of said cases, consequently we were compelled to go through this voluminous mass of testimony and select as best we could the evidence which was introduced in each case; and wherever reasonable doubt existed as to whether it was introduced in this case, we incorporated it instead of excluding it from the statement, knowing that it would have no prejudicial effect upon the merits of the case by so including it.

In the year 1893 there were about 3,500 acres of wet and overflowed lands in the Mississippi river bottom, near the towns of Winfield and Cap-Au-Gris, Monroe township, Lincoln county, which were rendered practically worthless by reason of their overflow. Some of the owners, including defendant, being desirous of reclaiming the lands, prepared and filed in the county court the petition mentioned in the pleadings in this case, praying for an order incorporating Cap-

Au-Gris Drainage and Levee District.   Notice was duly given of the filing and the date upon which it would be heard.  On the day set, remonstrances thereto were presented, heard and overruled by the court. The petition was then taken up, considered and found to be in compliance with the statutory requirements and that the district was necessary and feasible.   The court then appointed commissioners to view the lands and the proposed system of drainage and make report thereof as required by law.  The commissioners, after qualifying, proceeded to view, investigate and consider the premises, and made out their report in due form and returned same to the court.  The substance of the report, omitting formal parts, is as follows:

That on the 5th day of April, 1894, they began to examine the said premises or lands described in the petition proposed to be drained and protected and the land over or upon which the work is proposed to be constructed, or proposed to be improved, which said premises are hereafter described, decided that the said body of land containing about 3,500 acres of land in the Mississippi bottom in said county of Lincoln, contiguous to the towns of Cap-Au-Gris and Winfield, in township 49 north, range 2 and 3 east of the 5th P. M., and owned by plaintiff and some thirty-five others, naming all of them, could be reclaimed.  Then follows a long and minute description of the district, ditches and levees to be constructed, together with the name of the owner of each and every tract of land embraced therein and the number of acres in each tract.  The probable cost of the completed work, including incidental expenses, damages and cost of procedure, will be $12,247.17.  The probable cost of keeping the proposed work in repair after completion will be $800 per year.

This is the record in full as it appears in the record to this point.  The remainder of the record gives the individual person or persons who own the differ-

ent tracts of land within the levee district, and the description of the lands, and the assessments and damages, and the benefits against each tract, under the name of the owner thereof, among which appears the following:

A. C. WILSON: That A. C. Wilson owns 26.95 acres, being lot No. 7 of Survey No. 1653, and that the whole of said lot will be reclaimed and benefited to the amount of $100 and that amount is so assessed.

That A. C. Wilson owns 161.40 acres, as being lot No. 8 of Survey No. 1653, and the whole of said lot will be reclaimed and benefited to the amount of $650, and that amount is so assessed.

That A. C. Wilson owns 86.65 acres of land, known as the Riffle tract, and lying in Surveys Nos. 1653 and 1756, adjoining and north of the town of Cap-Au-Gris, and that said Wilson will be damaged to the amount of $47.75 for one hundred feet of right of way across said land, and that the said land will be reclaimed and benefited to the amount of $303.25, and leaving a balance of benefits of $255.50, and that amount is so assessed.

And your commissioners would further report that the plan of improvement as specified herein is entirely feasible and that in the opinion of your commissioners the land within the limits of said district will be securely protected from overflow, so as to render them exceedingly valuable for agricultural purposes, and that the benefits bestowed on said district will in the judgment of your commissioners increase the value of the lands in said district on an average of from $25 to $30 per acre.

Attached to said record was the conveyance of the right of way by James N. Duey, M. T. Kimberly, Lucy C. Hewitt, Lycena Duey, William N. Crenshaw, Susan Argent, Burnetta Crenshaw, J. M. Crenshaw, Geo. F. Trescott, Beverly Duey, T. T. Killam and H. G. Magruder, all of whom own lands in said district, as shown by the said record.

Upon the incoming of the report of the commissioners the court made and entered of record the following order:

IN THE MATTER OF THE CAP-AU-GRIS DRAINAGE AND LEVEE DISTRICT.

Now here on this day come Wm. J. Seaman, A. A. J. Sitton and Wm. Brimm, Commissioners, and file their report in the above-entitled cause, setting forth that the route and terminus of the proposed work, and the proposed location thereof is in all respects proper and feasible, the probable cost of the proposed work, in-

cluding all incidental expenses, the probable cost of keeping the same in repair after the work is completed, what lands will be injured thereby, the aggregate amount of such injuries, what lands will be benefited by the construction of the proposed work, apportioning and assessing the estimated cost of the same on the lands so benefited, as fully as they are required to make report under section 9 of the act of the General Assembly of. the State of Missouri, entitled, "An Act to provide for the organization of Drainage Districts, and for the construction, maintenance and repair of drains, ditches, levees in certain cases," approved April 1, 1893, together with the surveys, profiles, plans and specifications for said proposed work.

Whereupon the court orders that all persons interested in such report or in the work referred to therein be notified of these proceedings, so that they may appear and contest the confirmation of said report on Monday, the 24th day of September, 1894, on which day this court will be in session at the Court House in Troy, Missouri, where all persons interested will be given a proper hearing. And the clerk of this court is ordered to give notice of the time and place of such hearing to all parties interested, by the publication of a notice thereof, and of the amount of benefits and damage assessed and awarded by said report, which notice shall contain a description of all lands affected, by the publication of such notice for at least three successive weeks prior to the day set for such hearing in one newspaper published in the county, and by serving a copy of such notice on each of the persons or corporations affected thereby who reside in Lincoln county, at least twenty days before the day of hearing, either personally or by leaving at the last and usual place of abode.

All persons interested in or affected by the proposed work were duly notified of the filing of the report and the court's action thereon, and proof thereof was made and filed September 24, 1894.

On September 25th, the commissioners, by R. H. Norton, their attorney, presented their report for confirmation, and D. Dieckmeyer and S. L. McClay, objectors, by Chas. Martin, their attorney, presented their remonstrance against the confirmation of said commissioners' report.

Whereupon, an issue is framed, the court heard a part of the evidence and adjourned till the next day. And on the 26th day of September the following further proceedings were had in said cause, to-wit:

Now here comes all the parties to this suit by their respective attorneys, being the same parties as of yesterday, and after hearing all the evidence offered in the cause and argument of counsel, the legal and jurisdictional objections of remonstrants are by the court overruled and dismissed, and it is found by the court that the clerk of this court has caused notice of the time and place of hearing the report of commissioners in the above-entitled cause to be given by publication in the Troy Free Press, a public newspaper published in the county, for three successive weeks prior to the day for such hearing, that said notice so published contained a description of all the lands affected, together with the amount of benefits and damages assessed and awarded to each separate tract, as set out in said commissioners' report, as shown by the affidavit of H. F. Childers, publisher of said newspaper, on file in this court. That said clerk has caused further notice of the same to be given by having each person or corporation affected thereby who resides in Lincoln county served with a copy of said notice, so published, at least 20 days before the day set for hearing, either personally or by leaving at the last usual place of abode, as shown by the returns of J. C. Ellis, sheriff, on file in this court.

The court further finds from a hearing duly had that the report of said commissioners requires modification in this, to-wit: State definitely whether or not the benefits assessed will pay the costs of the completed work, including incidental expenses, the damages awarded and all costs of procedure, and also whether or not the actual benefits are sufficient to justify the proposed improvement, the same is by the court referred back to the commissioners, who are requested to modify their report in that respect. Said report having been modified by said commissioners as above directed and required, the court further finds that the amount of damages awarded to H. Dickmeyer by said commissioners is adequate, just and proper, and that he is not damaged in excess of the amount awarded by said commissioners.

It is therefore ordered and adjudged by the court that the commissioners herein do have and recover of the said H. Dickmeyer their costs and expenses in this behalf incurred and expended, and that execution may issue therefor.

The court further finds that the amount of damages awarded to S. L. McClay by said commissioners is inadequate, that the said McClay is damaged in the sum of one hundred and ninety dollars, and he, the said S. L. McClay, is by the court awarded the sum of one hundred and ninety dollars damages. It is therefore ordered and adjudged by the court that the said S. L. McClay do have and recover of said commissioners his costs and expenses in this behalf incurred, and that execution issue therefor.

From the finding aforesaid, the court further finds in favor of the validity of these proceedings, that the proposed work is in all respects feasible, just and proper; that the assessments made by said commissioners are ample to pay all expenses of the completed

work, including all damages awarded, incidental expenses and costs of procedure, and that the lands within the limits of said district securely protected from overflow on the completion of the proposed work, and being so redeemed and protected, said lands will be exceedingly valuable for agricultural purposes, and the benefits thus bestowed will greatly exceed in value the costs and expenses incurred in constructing said work.

Whereupon, it is ordered and adjudged by the court that the report of the commissioners be and the same is hereby confirmed, and the proposed work is established and authorized, and the proposed assessments are approved; said district is hereby declared by law to be organized as a drainage district by the name of "The Cap-Au-Gris Drainage and Levee District" with the boundaries fixed as set out in the commissioners' report; said district is hereby declared by the court to be a body corporate by the name mentioned aforesaid, with the right to sue and be sued, to adopt and use a corporate seal, and to have perpetual succession.

It is further ordered and adjudged by the court that the assessments of benefits authorized by the adoption of said report be and the same are assessed and levied to be paid in installments as follows, to-wit: 25 per cent of the assessment shall be due and payable on the 1st day of January, 1895, 1st day of July, 1895, first day of January, 1896, and first day of July, 1896.

The court further orders the clerk of this court to spread the report of said commissioners on the records in full and furnish a copy thereof to said commissioners. [Here follows report of commissioners as to deeds of relinquishment from various parties.]

Notices of the assessments were duly served upon all of the interested parties, and the one served upon defendant was as follows:

### CAP-AU-GRIS DRAINAGE AND LEVEE DISTRICT.

To A. C. Wilson: You are hereby notified that under the report of the commissioners of the Cap-Au-Gris Drainage and Levee District made to the county court of Lincoln county, Missouri, on the 17th day of August, 1894, the following assessments of benefits were made as follows:

In township No. 49, N. R. 2 and 3 east, in Lincoln county, Missouri.

|  | Acres | Benefits | Sum of benefits |
|---|---|---|---|
| A. C. Wilson the sum of Lot No. 7 of Survey No. 1653, township 49, range 3 east...... | 26.95 | $100.00 | $1,008.50 |
| Lot No. 8 of Survey No. 1653 township 49 range 3 east.. | 161.40 | 650.00 | . |

| | | |
|---|---|---|
| The Riffle tract lying in surveys Nos. 1653 and 1756 adjoining and north of the town of Cap-Au-Gris ........ ...... | 86.65 | 255.50 |
| Lot 1 in Block 7 in the town of Cap-Au-Gris ....... ....... | | 3.00 |

Which said assessments of benefits were confirmed by said county court, by order duly entered of record dated September 26, A. D. 1894, it being the August term of court.

You are further notified that said assessment of benefits were, by order of said county court of Lincoln county, Missouri, made payable as follows, to-wit: twenty-five per cent of assessment to be due and payable on the first day of January, 1895; twenty-five per cent due and payable on the first day of July, 1895, twenty-five per cent due and payable on the first day of January, 1896, and twenty-five per cent due and payable on the first day of July, 1896. And you are further notified that the undersigned commissioners will be present in the town of Winfield, Lincoln county, Missouri, at the Bank of Winfield, on July 15, 1895, between the hours of nine o'clock in the forenoon and six o'clock in the afternoon of said July 15th and the first day of January, 1896, and the first day of July, 1896, for the purpose of receiving payments of said assessment of benefits, at which time and place you are hereby notified to make payment of said assessments and benefits.

Witness our hands as commissioners and the seal of said Cap-Au-Gris Drainage and Levee District hereto attached.

(Seal)                               W. J. SEAMAN,
                                     W. A. J. SITTON,
                                     WM. BRIMM,
                                             Commissioners.

This notice contains also the names, description of lands, number of acres, amount of benefits of all parties named in heading to notice.

The following is the award of damages:

In the matter of the Cap-Au-Gris Drainage and Levee District: W. J. Seaman, Wm. A. J. Sitton and Wm. Brimm, commissioners for said Cap-Au-Gris Drainage and Levee District, file their report showing the assessment of damages and benefits on each tract, lot, easement, interest or servitude in said district, which said assessment was on the said 26th day of September, 1894, confirmed by said court. The said assessment as appears of record as aforesaid is as follows:

State ex rel. v. Wilson.

|  | Damages Assessed. | Net. Dam. Awarded. | Net. Dam. Assessed. |
|---|---|---|---|
| A. C. Wilson: The Riffle tract lying in surveys Nos. 1653 and 1756 adjoining and north of the town of Cap-Au-Gris.................. .. .... . . | $47.75 | $303.25 | $225.50 |

The above award also contained the names of all the owners and descriptions of all the lands and damages and benefits to all the lands in the entire district.

The following is a correct list of lands in the Cap-Au-Gris Drainage and Levee District of the first and second assessments of benefits that remain due and unpaid, this the 7th day of July, 1896:

| In whose Name Ass'd. | Subdiv. | Sec. or Sur. | Twp. | R | Acres | Amt. 1st Inst. due Jan. 1, 95 | Amt. 2nd Inst. due July 1, 95 |
|---|---|---|---|---|---|---|---|
| A. C. Wilson | Lot No. 7 | 1653 | 49 | 3 | 26.95 | $25.00. | $25.00. |
| A. C. Wilson | Lot No. 8 | 1653 | 49 | 3 | 101.40 | 102.10. | 102.10 |
| A. C. Wilson | Riffle tract |  | 49 | 3 | 71.55 | 63.87. | 63.87 |

The undersigned commissioners of the Cap-Au-Gris Drainage and Levee District of Lincoln county, Missouri, hereby certify that the above and foregoing list of names and descriptions of lands and amounts is a true and correct list and description of lands, together with the amounts of the first and second assessments of benefits thereon fixed by the court of Lincoln county, Missouri, at its August term, 1894, and are now remaining due and unpaid this the 7th day of July, 1896. In testimony whereof, we have hereunto set our hands and seals this 14th day of July, 1896, and the corporate seal of the Drainage and Levee District.

The following is a correct list of lands in the Cap-Au-Gris Drainage and Levee District of the third and fourth assessments of benefits that remain due and unpaid, this the 7th day of July, 1896:

| In whose name assessed. | Subdiv. | Sec. or Sur. | Tp. | R | Ac. | Amt. 3rd Inst. due Jan. 1, 96 | Amt. 4th Inst. due. July 1, 96 |
|---|---|---|---|---|---|---|---|
| Mike Dumphy | lot 7 | 1653 | 49 | 3 | 26.95 | $25.00 | $25.00 |
| A. C. Wilson | lot 8 | 1653 | 49 | 3 | 101.40 | 102.10 | 102.00 |
| A. C. Wilson | west side | 1653 | 49 | 3 | 60.00 | 60 40 | 60.40 |
| B. E. Magruder | lot 8 | 1653 | 49 | 3 | 71.55 | 63.875 | 63.875 |
| A. C. Wilson | Riffle tract | 1656 |  |  |  |  |  |

State ex rel. v. Wilson.

The undersigned commissioners of the Cap-Au-Gris Drainage and Levee District of Lincoln county, Missouri, hereby certify that the above and foregoing list of names and description of lands and amounts is a true and correct list and description of lands, together with the amounts of the third and fourth assessments of benefits thereon fixed by the court of Lincoln county, Missouri, at its August Term, 1894, and are now remaining due and unpaid, this the 7th day of July, 1896.

In witness whereof, we have hereunto set our hands and seals this 14th day of July, 1896, and the corporate seal of the Drainage and Levee District.

The following delinquent tax list was introduced in evidence:

FIRST ASSESSMENT.

| In whose Name Assessed | Sub. div. | Sec. or Sur. | Twp | R. | Acres. | Amt. 1st Inst. due Jan 1, '95 | Amt. 2nd Inst. due July 1, '95 |
|---|---|---|---|---|---|---|---|
| A. C. Wilson | N. W. pt. | 1653 | 49 | 3 E | 26.95 | $25.00 | $25.00 |
| A. C. Wilson | lot 7 | 1653 | 49 | 3 E | 161.40 | 162.50 | 162.50 |
| A. C. Wilson | Lot No 8. | 1653 | | | | | |
| | Riffle tract | 1756 | 49 | 3 E | 71.55 | 63.88 | 63.88 |
| | | | | | | Amt. 3rd Inst. due Jan. 1, '95 | Amt. 4th Inst. due July 1, '95 |
| A. C. Wilson | N. W. pt. | 1653 | 49 | 3 | 26.95 | $25.00 | $25.00 |
| A. C. Wilson | lot 7 | 1653 | 49 | 3 | 161.40 | 162.50 | 162.50 |
| A. C. Wilson | Lot No. 8. | 1653 | | | | | |
| | Riffle tract | 1756 | 49 | 3 | 71.55 | 63.88 | 63.88 |

| SECOND ASSESSMENT. | | | | | | Amount 1st Inst. due Sept. 1, 1898 |
|---|---|---|---|---|---|---|
| A. C. Wilson | Lot No. 8 except | 1653 | 49 | 3 | $101.40 | $68.40 |
| | 60 A off W. side | 1653 | | | | |
| | The Riffle tract | 1756 | 49 | 3 | 71.65 | 51.19 |

TO THE COUNTY CLERK OF THE COUNTY COURT OF LINCOLN COUNTY, MISSOURI:

We, the undersigned commissioners of the Cap-Au-Gris Drainage and Levee District, do hereby certify that the above and foregoing is a true, accurate and complete list of lands situated in Lincoln county, Missouri, and in said drainage district on which assessments for levee work are due and unpaid, together with the date of assessment when the installment is due and the amount of

tax or assessment due on the respective tracts subdivisions of said lands and the names of the respective owners of said various tracts of land. And we further certify that said assessments bear interest at the rate of six per cent per annum from the respective dates when they were due, as specified in the above list.

The following supplemental report was read in evidence:

IN THE MATTER OF THE CAP-AU-GRIS DRAINAGE AND LEVEE DISTRICT.

To the Honorable County Court of Lincoln County, Missouri:

The undersigned commissioners duly appointed and qualified, of the "Cap-Au-Gris Drainage and Levee District" by leave of the court first had and obtained comes and files this their supplemental report as follows:

It appears by the report of W. J. Seaman, William Brimm and W. A. J. Sitton, the immediate predecessors in office of the undersigned (which report was filed on January 2, 1897) that said commissioners, Seaman, Brimm and Sitton, had incurred and contracted in the prosecution of the work in said district an indebtedness of seven thousand, one hundred and fifty-seven and 38-100 dollars ($7,157.58) over and above the amount of estimate, levy and collection originally made and collected. That said amount so reported is with interest thereon still due and unpaid.

The undersigned further report that after the said 2nd day of January, 1897 (the date of said report) their said predecessors incurred a further indebtedness of six hundred and fifty-six and 30-100 dollars ($656.30) in the prosecution of the work of said district and issued therefor warrants in various sums, which warrants were numbered respectively from 220 to 236 inclusive. That said warrants are outstanding and unpaid. That said predecessors drew in their own favor warrants aggregating the sum of sixteen dollars, and that said last-named warrants exhausted all of the cash in the hands of the treasurer belonging to said district.

The undersigned further report to the court that since their appointment and qualification as commissioners they have been compelled to incur a further indebtedness in the prosecution of the work in said district to the amount of twenty-five dollars and have issued therefor warrants numbered from 240 to 243, both numbers inclusive. That these several sums of indebtedness now outstanding amount in the aggregate to the sum of seven thousand, eight hundred and thirty-eight and 68-100 dollars ($7,838.68) for the payment of which immediate provision should be made.

We further report to the court that as a necessary result of the work of drainage and reclamation of lands within said district, about eight hundred acres therein is subjected to inundation from the fall and flow of water within the levees constructed as aforesaid in said district. That this water may be and is properly

State ex rel. v. Wilson.

designated as "surface water." To relieve this large body of land of said water and to fully drain and reclaim all of the lands within said district it is necessary, in the opinion of the commissioners, that some artificial means be adopted for that purpose, and we report that, in our opinion, to do this work effectively it will require the erection and placing in position of machinery necessary to pump out the "surface water" which has and will continue to gather on that portion of land above mentioned within said district.

We further report that we have carefully estimated the expense and cost of such machinery necessary to the drainage and reclamation of said land and find it to be the sum of three thousand dollars.

It seems to us and we so report that said machinery is as necessary to the complete drainage and reclamation of the wet and overflowed lands within said district as is the building of levees and the digging of ditches, and without the doing of all of which the objects to be attained will be defeated.

We submit the following statement of the amounts due from said district and an estimate of additional sums necessary to be paid to complete the work of drainage and reclamation of the lands embraced within said Cap-Au-Gris Drainage and Levee District, to-wit:

Amount reported by former commissioners..........$ 7157.38
Warrants issued since January 2, 1897................ 681.30
Amount necessary for repairs ...................... 500.00
Salaries and other incidental expenses ............. 500.00
Interest (approximately) .......................... 2061.05
Machinery for drainage .......................... 3000.00

Total ...... .... ...... ........................$13,899.73

We respectfully recommend that an assessment to cover the above amount be authorized and directed and that the amount of said levy and assessment be divided into five equal annual payments, the first to become due and payable the first day of July, 1898, and the remainder on the first day of July each succeeding year until the whole thereof is paid.

| In whose name Assessed. | Subdiv. | Sec. or Sur. | Twp. | R. | Acres. | Amt. |
|---|---|---|---|---|---|---|
| Mike Dumphy | Lot 6 of Stewart est. bet Bluff road and McLean's Creek. | | 49 | 2 | 5 | 14.06 |

State ex rel. v. Wilson.

| In whose name Assessed. | Subdiv. | Damages assessed. | Twp. | R. | Net Dam. awarded | Net Dam. Assessed. |
|---|---|---|---|---|---|---|
| A. C. Wilson | The Riffle tract of land lying in sur. Nos. 1653 joining and north of the town of Cap-Au-Gris. | 1653 1756 | 49 | 3 | 86.65 | 341.16 |

[Endorsed:]  Supplemental Report of E. F. Trescott, W. T. Killam, B. E. Magruder, Commissioners of Cap-Au-Gris Drainage and Levee District.

This supplemental report contains the names and description of all land belonging to each party in the district and the amount assessed against each tract of land, but for brevity we print names only of those in dispute.

The following remonstrance was filed against the supplemental report:

IN THE COUNTY COURT OF LINCOLN COUNTY, MISSOURI.

TO THE HONORABLE, THE COUNTY COURT:

Now comes the undersigned owners of land in the Cap-Au-Gris Levee and Drainage District, and except and remonstrate to and against the report of the commissioners, Trescott, Magruder and Killam, filed on the 15th day of October, 1897, for the following reasons, to-wit:

First.  Because the former commissioners had no legal right to incur an indebtedness against said district without the order of the county court or presiding judge thereof, which order they did not have.

Second.  Because the former commissioners reported the Levee and Drainage completed, and machinery to pump water out of the district is no part of the levee or repairs thereof and there is no legal authority to levy a tax for such a purpose.

W. N. CRENSHAW.
J. A. OVERALL.
DANIEL MADEN.
JOHN PARSONS.
M. T. KIMBERLY.
B. E. BRADLEY.
MINNIE McEWAN.
BIRDIE BRADLEY.
EFFIE COX.
EDNA BRADLEY.
LIDA BRADLEY.
ELBA BRADLEY.
MARY BRADLEY.
JOHN J. CREEDON.
HERMAN DIECKMEYER.
J. T. ELSTON.
REBECCA CREWS.
HERMAN MEHS.
J. F. CRENSHAW.
A. C. WILSON.
MICHAEL R. DUMPHY.
MRS. MARGARET DUMPHY.

State ex rel. v. Wilson.

Also the following one was filed:

TO THE HONORABLE COUNTY COURT OF LINCOLN COUNTY, MISSOURI:

We the undersigned owners of land within the Cap-Au-Gris Drainage and Levee District, pray your honorable body to grant no further levee tax or assessment for the purchase of pumps, engines or other apparatus for use of said Cap-Au-Gris Drainage and Levee District, as we consider ourselves unable at present to meet any further monetary demands for levee purposes, and your petitioners will ever pray. ·

| | |
|---|---|
| JOHN A. CREEDON. | BIRDIE BRADLEY. |
| W. N. CRENSHAW. | LIDA BRADLEY. |
| ALEX MILLER. | JOHN PARSONS. |
| REBECCA CREWS. | M. T. KIMBERLY. |
| her mark | HERMAN MEHS. |
| X | J. F. CRENSHAW. |
| A. C. WILSON. | JOHN T. ELSTON. |
| EFFIE B. COX. | DANIEL MADEN. |
| B. E. BRADLEY. | R. L. WILSON. |
| MINNIE McEWEN. | M. R. DUMPHY. |
| EDNA BRADLEY. | H. DIECKMEYER. |
| ELBA BRADLEY. | J. A. OVERALL. |
| MARY BRADLEY. | A. C. WILSON. |

The cause was continued from time to time and from term to term, but as no point is made along that score the continuances are ignored.

On November 30, 1897, the court made and entered the following order:

IN THE MATTER OF THE CAP-AU-GRIS DRAINAGE AND LEVEE DISTRICT.

Now here come all the parties to this suit by their respective attorneys and after hearing all the evidence offered in the cause and argument of counsel, the legal and jurisdictional objections of remonstrants are by the court sustained as to the item of machinery for drainage.

It is further ordered by the court from the hearing duly had that remainder of said supplemental report be and the same is hereby approved in this, to-wit:

Amount reported by former commissioners...........$ 7157.38
Warrants issued since January 2nd, 1897............    681.30
Amount necessary for repairs .....................    500.00

From this order an appeal was duly taken to the circuit court, and on April 9, 1898, a trial was had and the following judgment was rendered therein, to-wit:

IN THE CIRCUIT COURT OF SAID COUNTY. On the 9th day of April, 1898, the following, among other proceedings, were had, viz.:

In the matter of the Cap-Au-Gris Drainage and Levee District, Daniel Maden, excepting to the report of the commissioners, appellant, appealed from the county court to Lincoln county, Missouri.

Now here in open court comes the Cap-Au-Gris Drainage and Levee District by its commissioners and also represented by its attorneys, Norton, Avery & Young, and also comes the appellant excepting to the report of said commissioners in proper person and by attorneys, J. W. Matson and Geo. T. Dunn, and the cause being called for trial both parties answer ready, and the report of the commissioners and the remonstrance together with all the pleadings and the evidence and argument of counsel being submitted to the court, the court doth find as follows:

FIRST. That the commissioners, in the building and construction of the proper ditches and levees as they were authorized to construct and build by their charter and authority, given them, representing the said Cap-Au-Gris Drainage and Levee District, have incurred an indebtedness for labor thereon of seven thousand, one hundred and fifty-seven and 38-100 dollars, over and above the amount of estimate, levy and collection originally made and collected, and that said amount with interest thereon is due and unpaid, this indebtedness accruing prior to January 2nd, 1897.

It being fully found by the court that in the first assessment made by the commissioners reported to the court a smaller sum than was needed to complete the work of said drains and levees in said district either in construction or repairs.

SECOND. That since the 2nd day of January, 1897, the commissioners of said district in the prosecution of work necessary to the building and keeping in repair of said ditches and levee have incurred a further indebtedness of six hundred and eighty-one and 30-100 dollars, which said amount is due by said Drainage and Levee District and ·is unpaid.

THIRD. That the said ditches and levees as builded by said district are now in need of repairs, and that the sum of five hundred dollars is necessary to do said repairing.

FOURTH. That there are now due and it becomes necessary to raise five hundred dollars to pay salaries of the officers of said corporation and incidental expenses connected therewith.

FIFTH. That the interest on the indebtedness now accumulated and which will accumulate before the same will be paid will amount to the sum of fifteen hundred dollars.

SIXTH. The court doth further find that no assessment in the sum of three thousand dollars or any other amount can be made for the erection and placing in position necessary machinery to pump out the surface water gathering in said ditches or any part thereof.

216 Sup—17

State ex rel. v. Wilson.

It is therefore ordered, adjudged and decreed by the court that the report of the commissioners be adopted except as to machinery necessary to pump out surface water and that that part be rejected, and that a further assessment be made proportional on the first assessment in the sum of ten thousand, three hundred and eighty-eight and 68-100 dollars, being amount found by the court under the evidence to be necessary, as follows:

Amount reported due for work by former commissioners .......................................$ 7157.38
Warrants issued for work on district since January 1, 1897 ................................................. 681.30
Amount necessary for repairs ...................... 500.00
For salaries and other incidental expenses............ 500.00
Interest ........................................... 1500.00

And that the same be levied on the lands in said district in the same proportion as the first assessment and the said sum is by the court adjudged to be assessed and levied and collected in five equal annual payments as follows, to-wit:  One-fifth thereof to be paid September 1st, 1898, and one-fifth on each succeeding September 1st, until the whole amount is paid, and it is further ordered that a certified copy of this judgment and decree be transmitted by the clerk of this court to the county court of Lincoln county, Missouri, and a certified copy thereof served on each of the commissioners of the said Cap-Au-Gris Drainage and Levee District, and it is further ordered, adjudged and decreed that the Cap-Au-Gris Drainage and Levee District have and recover from the appellant, Daniel Maden, and his bondsmen, St. Louis, Keokuk & Northwestern Railway Co., and R. L. Wilson, the costs in this behalf incurred and that it have judgment and execution therefor.

The foregoing judgment of the circuit court was duly served on the commissioners shortly after its rendition.

The following is a corrected list of the assessments for the amount of assessments against defendant's land, approved by the county court at the November term, 1897, and sustained by the circuit court, at its spring term, April, 1898:

|  |  | Sec. | Twp. | R. | Acres. | Assessment. |
|---|---|---|---|---|---|---|
| A. C. Wilson | N. W. pt. lot 7 | 1653 | 49 | 3 | 26.95 | $84.40 |
| A. C. Wilson | Riffle tract | 1653 1759 | 49 | 3 | 71.65 | 255.95 |
| A. C. Wilson | E. Side Lot No. 8 | 1653 | 49 | 3 | 101.40 | 342.30 |

State ex rel. v. Wilson.

And was certified to the county court by the clerk thereof September 27, 1898, as appears by the following certificate:

I, Wm. A. Jackson, clerk of the county court within and for said county, hereby certify the above and foregoing to be a true and correct copy of "corrected assessment list" filed in my office on September 1st, 1898, by commissioners in the Cap-Au-Gris Drainage and Levee District.

In testimony whereof, I have hereunto set my hand and affixed the seal of said court at office in Troy, this 27th day of September, 1898.

WM. A. JACKSON,
County Clerk.

The following is a copy of the delinquent list of taxes due by defendant to the district, made by the commissioners and filed in the office of the county clerk May 15, 1901, showing the taxes on his lands that were then due and delinquent, together with a description of the lands and when the taxes were due, setting out in full the names of owners, descriptions of lands and amounts due, among them the following:

| | | Sec. | Twp. | R. | Acres. | Amt. due Sept. 1, 1900 |
|---|---|---|---|---|---|---|
| M. R. Dumphy | S. E. Cor. W. End Lot No. 6 of the | 742 | 49 | 2 | 5 | 2.11 |
| M. R. Dumphy | Stewart estate. Lot No. 3. | 1756 | 49 | 3 | 150 | 119.28 |
| H. C. Magruder | Dalton estate part lot No. 7. | 1653 | 49 | 3 | 37 | 21.86 |
| | | 1653 | 49 | 3 | 26.95 | 16.88 |
| A. C. Wilson | Lot 7. | 1653 | 49 | 3 | 101.40 | 68.46 |
| A. C. Wilson | Lot 8. | 1653 | | | | |
| A. C. Wilson | The Riffle tract. | 1756 | 49 | 3 | 71.65 | 51.19 |

Endorsed: Certified copy of list of Delinquent Taxes in the Cap-Au-Gris Drainage and Levee District, filed May 15, 1901, Lincoln county, B. H. Wommack, clerk.

Plaintiff then introduced the following copy and the certificate thereto of delinquent taxes due the district for the year 1902, which was filed March 12, 1902, to-wit:

State ex rel. v. Wilson.

To the Clerk of the County Court of Lincoln County, Missouri: The following is a certified list of the delinquent taxes due the Cap-Au-Gris Drainage and Levee District on lands situated in Lincoln county, Missouri, together with a description of said lands, the amount due and when due. And we further certify that this installment draws six per cent interest from the date when due.

| | | Sec. | Tp. | R. | Acres. | Amt. due Sept. 1, 1901 |
|---|---|---|---|---|---|---|
| | N. part Lot No. 7 Survey. | 1653 | 49 | 3 | 26.95 | $16.88 |
| A. C. Wilson | Lot No. 8. except 60 acres W. side 1653. Riffle tract in Survey Lots 4, 5, & 6 in Blk. 2, 4, 5, & 6 Blk. 3 | 1653 | 49 | 3 | 101.40 | 68.40 |
| | Lots 4, 5, & 6 Blk. 4; all block 5 except 2, 5; Blk. 6 L. 1 & 2 Blk. 7 | 1756 | 49 | 3 | 71.65 | 51.19 |
| | L. 1 & 6, B. 10 L. 1 & 6 B. 11 all in town of Cap-Au-Gris. | | 49 | 3 | | 3.54 |

Endorsed: List of delinquent taxes Cap-Au-Gris Drainage and Levee District, filed March 12, 1902, Lincoln county, B. H. Wommack, clerk.

Plaintiff then introduced the land tax-book of Lincoln county, Missouri, for 1896, in so far as it affects defendant's lands, and is as follows:

LAND TAX BOOK OF LINCOLN COUNTY, 1896, PAGE 316.
State of Missouri, County of Lincoln.

CAP-AU-GRIS DRAINAGE AND LEVEE DISTRICT.

List of lands upon which the special assessments for benefits fixed by the County Court of Lincoln County, Missouri, at its August Term, 1894, remaining due and unpaid on the 7th day of July, 1896:

State ex rel. v. Wilson.

| Name. | Subdiv. | Sur. | Tp. | R. | Acres. | |
|---|---|---|---|---|---|---|
| A. C. Wilson | Lot 7 | 1653 | 49 | 2 E | 26.95 | Amount 1st Installment due Jan. 1, 1895 $37.02<br>Amount 2nd Installment due July 1, 1895 $37.03<br>Amount 3rd Installment due Jan. 1, 1896 $37.02<br>Amount 4th Installment due Jan. 1, 1896 $37.03 |
| A. C. Wilson | Pt. Lot 8 | 1653 | 49 | 2 E | 101.40 | Amount 1st Installment due July 1, 1895 $102.10<br>Amount 2nd Installment due July 1, 1895 $102.10<br>Amount 3rd Installment due Jan 1, 1896 $102.10<br>Amount 4th Installment due July 1, 1896 $102.10 |

Wilson, A. C. Riffle Tract 1653 and 1656 49 3 E 71.55.

| | | | | |
|---|---|---|---|---|
| Amount of first installment due | Jan. 1st, 1895.......... | $63.87 |
| "  " 2nd  "  " | July 1st, 1895.......... | 63.88 |
| "  " 3rd  "  " | Jan. 1st, 1896.......... | 63.87 |
| "  " 4th  "  " | July 1st, 1898.......... | 63.88 |

I, Wm. A. Jackson, clerk of the county court in and for said county, hereby certify that the above is a correct statement, list and description of those lands in said county comprising a portion of the Cap-Au-Gris Drainage and Levee District on which the assessments are due and unpaid, with the dates when the respective amounts were due, the amounts of said various assessments and the names of the owners of said tracts described in delinquent list certified to me on the 15th of July, 1896, by Wm. J. Seaman, W. A. J. Sitton and Wm. Brimm, commissioners of said district.

Witness my hand and seal as county clerk, this 5th day of July, 1896.

(Seal)

WM. A. JACKSON,
Clerk.

Counsel for plaintiff next offered in evidence the land tax-book of Lincoln county, Missouri, for 1899, showing the delinquent list filed in 1899 by the commissioners, which reads as follows:

TAX BOOK OF LINCOLN COUNTY, MISSOURI, FOR THE YEAR 1899. No. 1501.

Wilson, A. C. Pt. lot 8, Survey 1653, Tp. 49, R. 3 E., 101.40 acres.
Total valuation of assessor ....................$260 00
Total valuation of County Board of Equalization.. 260 00
Total valuation State Board of Equalization ...... 260 00
State tax 65 cts.; County tax, 23; Road tax, 26; school tax, 1.04.

Cap-Au-Gris Drainage and Levee tax; 1st inst. due Jan. 1st, 1895, $101.60; 2nd inst. due July 1st, 1895, $101.60; 3rd inst. due Jan. 1st, 1896, $101.60; 4th inst. due July 1st, 1896, $101.60.

(Marked on book "All above to A. C. Wilson.")

CURRENT NUMBER 1502.

Wilson, A. C. Riffle tract, Sur. 1563 and 1756, Tp. 49, R. 3 E., acres 71.55.

Total valuation by assessor ........................ $460 00
Total valuation State Board ...................... 460 00
Total valuation County Board .................... 460 00

State tax, $1.15; County tax, $4.14; road tax, .46; School tax, $1.84.

Cap-Au-Gris Drainage and Levee tax, 1st installment due Jan. 1, 1895, $63.88; 2nd installment due July 1, 1895, $63.88; 3rd installment due Jan. 1, 1896, $63.88; 4th installment due July 1, 1896, $63.88.

No. 1507.

Wilson, A. C. N. W. Pt. lot 7, Sur. 1653, Tp. 49, R. 3 E., 26.95 acres.

Valuation by assessor ........................ $120 00
County Board Equalization ...................... 120 00
State Board Equalization ...................... 120 00

State tax, .30; County tax, $1.08; Road tax, .12.

Cap-Au-Gris Drainage and Levee tax, 1st installment due Jan. 1, 1895, $25; 2nd installment due July 1, 1895, $25; 3rd installment due Jan. 1, 1896, $25; 4th installment due July 1, 1896, $25.

No. 1511.

Thereto attached is the following certificate:

I, Brice H. Wommack, Clerk of the County Court in and for said county and state aforesaid, do hereby certify that the foregoing is the Land Tax Book of said county, containing all the real estate of said county for the year 1899, as set out in the assessor's book and is a copy thereof, and that said assessor's book remains on file in my office.

Witness my hand and official seal, this 26th day of September, 1899,

Plaintiff also introduced the Back Tax-Book for the year 1899 in so far as affecting defendant's lands, and is as follows:

No. 1501.

Wilson, A. C. Pt. lot 8, Sur. 1653, 101.40 acres.

Valuation 260; Road tax, 2; School tax, 1.04.

Cap-Au-Gris Drainage and Levee tax, 1st installment due Jan. 1st, 1895, $101.60; 2nd installment due July 1st, 1895, $101.60; 3rd installment due Jan. 1st, 1896, $101.60; 4th installment due Sept. 1st, 1898, $64.46.

State ex rel. v. Wilson.

No. 1502.
Wilson, A. C.   Riffle tract, Sur. 1653 and 1756; tp. 49, R. 3 E., 75.55 acres.

Valuation 4.60; road tax, 46; school tax, $1.84; total $7.59.

Cap-Au-Gris Drainage and Levee tax, due Jan. 1st, 1895, $63.88; 2nd installment due July 1st, 1895, $63.88; 3rd installment due Jan. 1st, 1896, $63.88; 4th installment due Sept. 1st, 1898, $51.19.

No. 1502.
Wilson, A. C.   N. W. Pt. lot 7, Sur. 1653, Tp. 49, R. 2 E., 26.95 acres.

Valuation 120; road tax 12; school tax 48; total $1.98.

Cap-Au-Gris Drainage and Levee tax, 1st installment due Jan. 1st, 1895, $25; 2nd installment due July 1st, 1895, $25; 3rd installment due Jan. 1st, 1896, $25; 4th installment due July 1st, 1896, $25.

Counsel for plaintiff next offered in evidence the Consolidated Tax-Book for 1900, and the certificate thereto, also entries opposite current numbers 226, 227, 228, 229, which is as follows:

CONSOLIDATED TAX BOOK, LINCOLN COUNTY, MISSOURI, FOR THE YEAR 1900 AND PRIOR YEARS.

State of Missouri, }
                   } ss.
County of Lincoln. }

I, Brice H. Wommack, Clerk of the County Court in and for said County and State aforesaid hereby certify that the foregoing pages are the Consolidated Tax Book of said County for the year 1900 and prior years, setting forth opposite each tract of land or town lot the year or years for which said tract of land or town lot is delinquent or forfeited and the amount of the original tax due each fund on said real estate and interest due on the whole of said tax at the time said tax books were made, together with the clerk's fees then due and the aggregate amount of taxes, interest and clerk's fees charged against each tract of land or town lot for all the years for which the same is delinquent or forfeited. That said land delinquent list of said county for the year 1900 was returned by Frank D. Brown, Collector of the County Revenue, for said county, on the 4th day of March, 1901, and by the county court of said county was examined, compared, corrected and approved and certified by said collector and filed in my office on said fourth day of March, 1901.

In testimony whereof, I hereunto set my hand and affix the seal of said court at my office in Troy, Missouri, this fourth day of May, 1901.

(Seal)                    BRICE H. WOMMACK, County Clerk.

State ex rel. v. Wilson.

CURRENT No. 226.

Wilson, A. C. Pt. lot 8, Sur. 1653, Tp. 49, R. 3 E., 101.40 acres, valuation, 260.

State tax, 65; county tax, 2.34; road tax, 26; school tax, 1.04; total 4.29.

Cap-Au-Gris Drainage and Levee tax, first installment due July 1st, 1895, $101.60; second installment due Jan. first, 1896; $101.60; third installment due July 1st, 1896, $101.60; fourth installment due Sept. 1, 1898, $68.48.

No. 227.

Wilson, A. C. Riffle tract, Sur. 1653, and 1756, Tp. 49, R. 3 E., 71.55 acres; valuation 4.60.

State tax, 1.15; County tax, 4.14; road tax, .46; school tax, 1.84; total, 7.59.

Cap-Au-Gris Drainage and Levee District tax, first installment due Jan. 1st, 1895, $63.88; second installment due July 1st, 1895, $63.88; third installment due Jan. first, 1896, $63.88; fourth installment due Sept. first, 1898, $51.19.

(Remarks: March 30th, 1901—All but levee tax paid.)

No. 229.

S. W. Cor. lot 7, Sur. 1653, Tp. 49, R. 3 E., 26.95 acres.

Cap-Au-Gris Drainage and Levee District tax, first installment due Jan. 1st, 1895, $25; second installment due July first, 1895, $25; third installment due Jan. first, 1896, $25; fourth installment due July first, 1896, $25.

(Remarks: All but levee tax paid March 31st, 1901.)

All of the land-owners were duly notified of the various assessments shortly after they were made, by the secretary of the district.

The defendant offered evidence tending to prove the allegations of his answer regarding the arrangement alleged to have been made between defendant and the promoters of the drainage district in reference to the old levee, which, upon objection, was by the court excluded, and defendant duly excepted.

The defendant has presented the following assignments of error:

1st. The original petition praying for the organization of the drainage district should allege that the petition was signed by the "adult owners of more than one-half of the lands within the district proposed to be organized, representing in area more than one-half of the lands to be reclaimed, benefited, affected, or

wet." These facts should appear upon the face of the the proceedings in the county court. They are jurisdictional requisites and the failure of the proceedings in the county court to show these facts renders the organization of the Cap-Au-Gris Drainage and Levee District illegal and void.

2nd. The original petition should give a description of the "starting point, route and terminus of the proposed levee" and the starting point, route and terminus of the proposed drainage district. These are jurisdictional requisites which must appear upon the face of the proceedings.

3rd. The record of the county court on the original petition should show that the court found that the "proposed levee and drain were necessary or would be useful for the drainage of the lands proposed to be drained thereby for agricultural purposes." These are jurisdictional requisites and should appear upon the face of the proceedings.

4th. The record of the proceedings in the county court does not show that the county clerk caused a notice to be given stating "when and in what court the petition praying for the organization of the Cap-Au-Gris Drainage and Levee District was and is filed, the starting point, route, termini and general description of the proposed work, the boundaries and name of the proposed drainage district and at what term of said court, when and where the petitioners will ask a hearing of said petition." The court only found that "notice of the filing of said petition" was given, but does not find that such notice expressed the other facts as required by section 3, Laws 1893, page 189, Revised Statutes 1899, section 8320. These are jurisdictional requisites and the failure of the proceedings had in the county court to show the same affirmatively, renders said proceedings illegal and void.

5th. The failure of the commissioners in their report to the county court to state the "aggregate

amount of injuries to lands by the proposed work" rendered ineffectual all proceedings. This is a jurisdictional requisite and should appear upon the face of the proceedings.

6th. The failure of the commissioners in their report to the county court to "state whether the proposed district, as set out in the petition (original) filed, would embrace all the lands that might be damaged or benefited by the proposed work" or to state "what additional lands would be benefited or damaged, and the amounts of the benefits or damages, in the same manner as though such lands were included in such original petition" renders that and all subsequent proceedings ineffectual. This being a jurisdictional requisite should appear on the face of the proceedings.

7th. The finding of the county court that "the proposed work is in all respects feasible, just and proper" is not supported by the report of the commissioners, or by the record of the county court introduced in these causes.

8th. The commissioners having failed to report to the county court "whether the starting point, route and terminus of the proposed levee" and "whether the starting point, route and terminus of the proposed drainage district," and the "proposed locations thereof was in all respects proper and feasible," and "if not, what was," rendered all subsequent proceedings ineffectual. These are jurisdictional requisites and should appear on the face of the proceedings.

9th. The failure of the commissioners in their report, and the county court in its findings to definitely fix the boundaries of the "drainage district" and to state the "starting point, route and terminus of the levee" and the "drainage district," precluded the drainage commissioners from proceeding to lay out the district.

10th. The action of the commissioners (Trescott, Killam and Magruder) and their predecessors in office

in contracting an indebtedness amounting to $10,-899.73, over and above the amount of the first assessment levied by the county court, and the acts of the circuit and county courts of Lincoln county in ordering the second assessment to pay said indebtedness, are contrary to the express prohibitions of law and are illegal and void. The second or supplemental assessment is not a lien against the lands of these defendants and cannot be enforced in these causes.

11th. Section 20, Laws 1893, page 195, Revised Statutes 1899, section 8337, under which the second or supplemental assessment was attempted to be levied, provides a further assessment . . . may be made under the order of the court, or presiding judge thereof, without notice. Said action inasmuch as it provides for assessments upon real estate for drainage purposes, without notice to the owners thereof, so that they may in some way, if they choose, contest the validity or the amount of such assessments, is void, as being in conflict with the constitutional inhibitions against taking private property "without due process of law" and "the taking of private property for public use without just compensation."

12th. The circuit and county courts of Lincoln county had no authority to order a levy of the second or supplemental assessment of taxes against the lands of these defendants, when the reports of the commissioners and the record proceedings of the county court showed that the first assessment of levee taxes against said lands were in amounts equal to the benefits shown by said reports and records; and that the entire amount of the second assessment of taxes was over and above the amounts of benefits to said lands. Levee taxes are limited to the amounts of the benefits. Said second or supplemental assessment is illegal and void. The second assessment of levee taxes being in excess of the benefits conferred, and not being predicated upon benefits to the lands of these defendants, was to the extent

thereof an assessment without benefits, is null and void and amounts to the confiscation of the property of these defendants and the taking of same "without due process of law" and the "taking of private property for public use without just compensation."

13th.  The certificate of the county clerk to the alleged list of delinquent assessments of the defendant is not sufficient compliance with the statutes in this, that it does not show that the county clerk entered said dilinquent assessments in the tax lists for Lincoln county next thereafter, nor that the tax lists were corrected and adjusted, nor that he had made a fair copy thereof with the taxes extended therein, authenticated by the seal of the court, nor that he had delivered the same to the county collector.  These are essential requisites before the county collector can proceed.  It is his authority to act.  The pretended list and certificate is not a tax-book of Lincoln county for 1896.

14th.  The back tax-book for 1899 is not a sufficient compliance with the statutes, in this, that it does not appear that the county court examined and compared the delinquent lists and corrected same and caused the list so corrected to be certified and filed in the office of the county clerk; that the clerk made the said corrected lists into a "back tax-book" and delivered the same to the county collector.  The alleged "back tax-book" for 1899 is not certified to at all.

15th.  The alleged delinquent assessments, if they were delinquent, should have been entered in the back tax books for 1897.

16th.  The first, second, third and fourth installments of the first assessment falling due respectively January 1, 1895, July 1, 1895, January 1, 1896, and July 1, 1896, should have been certified to by the commissioners when they were due and unpaid to the county clerk.  The failure of the commissioners to so certify, until July 15, 1896, precluded the enforcement

of said installments against the lands of these defendants.

a. The same objection applies to the first installment of the second assessment. It was due September 1, 1898, but was not certified to the clerk as due and unpaid until May 8, 1899, and May 15, 1901.

17th. The commissioners having failed to make any certification whatever to the county clerk of the alleged delinquency of the first installment of the second assessment, due September 1, 1898, as to tract No. 2 (Lot No. 7 in Survey 1653, Twp. 49, R. 3 East), of defendant A. C. Wilson's lands, the court correctly found on the fifth count of plaintiff's petition for said defendant as to said item (tract No. 2) of the first installment of the second assessment. The said item of the first installment of the second assessment not having been returned delinquent by the commissioners and not having been entered by the clerk on the tax lists next thereafter, prevented enforcement of said item of said installment of said assessment.

18th. The first assessment was levied by the county court on the 26th day of September, 1894, and made payable in four installments of twenty-five per cent each, on January 1, 1895, July 1, 1895, January 1, 1896, and July 1, 1896, but the suits against Wilson and Wilson et al., were not filed until December 28, 1900. The first and second counts in said suits being for the first and second installments, respectively, of said assessment, the circuit court properly held that said first and second installments were barred by the Statute of Limitations on the 28th day of December, 1900.

19th. The circuit court erred in not permitting defendants to show the terms of the contract under which they became petitioners for the establishment of the new levee district in controversy, to-wit: that it was agreed between defendants on the one hand (owners of the levee already built and to form a part of the proposed new levee) and the promoters of the new dis-

trict, that whatever costs might be assessed against defendants for the new levee should and would be reduced by the value of defendant's old levee at the price per cubic yard of the cost of making the new levee.

20th. Defendants' signing the original petition does not estop them from questioning the legality of the second assessment.

a. Remonstrances filed by defendants in the proceedings to confirm said second assessment and the judgments of the courts therein in overruling said remonstrances will not estop these defendants, because the courts (county and circuit) wherein said remonstrances were heard and said judgments rendered were without jurisdiction.

21st. The judgments of the county and circuit courts confirming the second assessment on the report of the commissioners is not *res adjudicata* upon any question in these cases, because the court acted without jurisdiction.

a. Said second assessment being in excess of benefits was illegal and void.

b. Said second assessment being levied for an indebtedness previously incurred was illegal and void.

c. Judgment rendered on said second assessment was illegal and void. A void judgment is a nullity and may be attacked collaterally.

22nd. Suits are brought in the name of the State at the relation of county collector. No authority is given the county collector to receive and receipt for taxes of this character by statute from which alone he derives his powers. When the court confirms the report of the commissioners, the statute (latter part sec. 8331, R. S. 1899) declares the district to be a body corporate by the name mentioned in the petition with right to sue and be sued, adopt a seal, etc., and the order of the Lincoln County Court declares "Cap-Au-Gris Drainage and Levee District" is a body corporate and had a right to sue. For what may it sue? Cer-

tainly for the money due, and these taxes if due at all must be due the body corporate and suit should have been brought in the name of the district and the proceeding would have been governed by the law for the collection of ordinary taxes except as to the name of the plaintiff. If the district is not a body corporate of course plaintiff cannot recover, and if the district is a body corporate plaintiff cannot recover. If plaintiff recovers and taxes should be paid to the collector what shall he do with the money? Pay it to the county treasurer? Then upon whose order, check or warrant shall he disburse the same? The law has no answer to these questions and its absence is a good reason for the conclusion that the plaintiff has no right in the matter.

The errors assigned by the plaintiff will be noted in the opinion and be considered after we have disposed of those assigned by the defendant.

## OPINION.

I. The first nine errors assigned by defendant relate to and question the validity of the incorporation of the Cap-Au-Gris Drainage and Levee District.

Counsel for plaintiff insists, first, that those assignments are not true in fact; and, second, that conceding them to be true, the validity of the incorporation of the district cannot be questioned collaterally in this suit.

We will dispose of these two contentions in the inverse order in which they are stated.

Section 8331, Revised Statutes 1899, provides that "any owner of lands, person or corporation affected by the work proposed, may appear on the day set for hearing of said report and remonstrate against the whole or any part of the proposed work. Such remonstrances shall be verified by affidavit, and shall set forth the causes, whether legal or jurisdictional objections, or that any lands are assessed too high or too low, or improperly, or that lands are assessed

which ought not to be, or that lands should be assessed which are not assessed, or that the plans for said proposed work should be changed, or that the boundaries of said district should be altered so as to include or exclude certain lands, or by any person or corporation to whom damages are allowed that they are inadequate, or by any person or municipality that the public will not be benefited by the proposed work. The county court for said county, or the presiding judge thereof, may fix a time at any term or appoint a special term for hearing the objections, and, on demand of any person or corporation assessed for benefits or awarded damages, may frame an issue in said matter, and may empanel a jury and take the verdict of a jury upon the trial of such issue, whether the amount of damages awarded by the commissioners is adequate, and whether the assessments of benefits as made by the report to any remonstrant commanding the review by a jury is too high, and the jury may assess the same. All other issues arising on remonstrance shall be tried by the court. If the court finds from a hearing duly had that the report requires modification, the same may be referred to the commissioners, who may be required to modify the report in any respect. In any case between the commissioners and any remonstrant, the court may award and apportion the costs as the justice of the case may demand, and costs awarded against the commissioners shall be paid out of the fund realized from the assessment made. If the finding of the court be in favor of the validity of the proceedings, the court, after the report shall have been modified to conform to the findings, or, if there be no remonstrance, the court shall confirm the same, and the order of confirmation shall be final and conclusive, and the proposed work be established and authorized and the proposed assessments approved, subject to the right of appeal to the Supreme Court, as in other ac-

tions. And, upon the entering of such order of confirmation of record, said district is hereby declared by law to be organized as a drainage district by the name mentioned in said petition, and with the boundaries fixed by the order confirming the report of said commissioners. And said district is hereby declared to be a body corporate by the name mentioned in said petition as aforesaid, with the right to sue and be sued, to adopt and use a corporate seal, and to have perpetual succession; and the commissioners appointed as aforesaid and their successors in office shall, from the entry of such order of confirmation, constitute the corporate authorities of such drainage district, and shall exercise the functions conferred upon them by law, and do all things and perform all acts necessary to the construction and preservation of the proposed work; and all proceedings had prior to the entry of such order of confirmation shall be deemed and are hereby declared to be necessary to the formation of said body corporate.''

This statute in express terms gave the county court jurisdiction of this proceeding, and authorized it to hear and decide all questions as to the validity of the proceedings, whether legal or jurisdictional, and render a final and conclusive judgment confirming the assessments and incorporating the district.

The evidence shows and it is not contradicted that all parties interested in any of the land located within the district were duly notified of the proposed assessment and incorporation, and for them to appear upon a day named therein and show cause, if any existed, why a judgment should not be rendered confirming the assessments and incorporating the district. A hearing was had upon the day stated in the notice, and after due consideration the court entered a judgment confirming the assessments and incorporating the district.

216 Sup—18

That judgment in the language of the statute is "final and conclusive" upon all objections to the incorporation of the district whether legal or jurisdictional. Defendant was not only notified of the proposed incorporation but he was also one of the landowners who petitioned the county court to incorporate the district.

This court, in the case of Lingo v. Burford, 112 Mo. 147, held, that where the jurisdiction of an inferior court depends upon a fact which it is required to ascertain and settle, its decision thereon is conclusive against collateral attack. The same rule is announced in the following cases: Union Depot Co. v. Frederick, 117 Mo. 138; Belk v. Hamilton, 130 Mo. 292.

As before stated, defendant was in court, both as a petitioner and by notice, and if he had any objection to the incorporation of the district as proposed, or to any portion of the commissioners' report, he should have presented it to the court in a remonstrance, verified by affidavit, as required by said section of the statute, on the day when the cause was heard. The defendant having had his day in court and having held his peace, when he could and might have spoken and presented any valid objections he may have had to the proceedings, he should not now be heard to complain of the court's action. [St. Louis v. Brown, 155 Mo. 545; Kansas City v. Duncan, 135 Mo. 571.]

This direct question was presented to this court in the case of Black v. Early, Collector, et al., 208 Mo. 281. In that case this court, speaking through LAMM, J., in an able and exhaustive opinion, after reviewing all the authorities, said: "The main insistence of defendants is that in a suit to collect, or enjoin the collection, of school taxes, the corporate existence of the school district itself cannot be inquired into; and that when the invalidity of the tax

is alone predicated of an alleged invalid organization of a school district (as we hold to be the case here) that has been exercising the functions of one and conducting a school, the case is without equity. . . . Hence it is that on the facts uncovered below we are persuaded to hold and do hold that 'the infirmities, if any, in the organization of the School District of the Town of Hurdland, do not entitle plaintiffs to the relief prayed; and that the corporate existence of that district cannot be inquired into in this case, but must be left open to be determined in *quo warranto,* and this holding must result in reversing the decree and dismissing plaintiffs' bill.''

That case is on all-fours with the case at bar, and is decisive of the question that the validity of the incorporation of the Cap-Au-Gris Drainage and Levee District cannot be inquired into in this suit. That question can only be determined by *quo warranto.*

Ordinarily the conclusion above reached, holding that the validity of the incorporation of the drainage district could not be questioned in this proceeding, would and should fully dispose of the first nine errors assigned by counsel for defendant; but not so in this case, for the reason that the correctness or incorrectness of some of the facts stated in those assignments form the basis of some of the legal propositions presented for our determination in other errors assigned by the defendant, and we had just as well determine those contentions now.

Defendant first contends that the organization of the drainage district is illegal and void because the petition filed with the court praying for a decree incorporating it failed to state that it was signed by the one-half of the adult owners of the lands within the district proposed to be organized. In our opinion the facts do not warrant that contention. The allegation of the petition upon that point is in the following language: The petition was ''duly signed by a ma-

jority of the owners of all the lands in said above-mentioned district and by the owners of more than half of said lands, all of said petitioners and owners being adults of lawful age," etc.

The second contention of defendant is that the petition failed to "give a description of the starting point, route and terminus of the proposed levee, and the starting point, route and terminus of the proposed district, and for those reasons the court acquired no jurisdiction of the case." We are also of the opinion that this contention of defendant is not borne out by the facts, for the petition with the greatest detail describes and fixes boundary lines by giving its metes and bounds and by describing the lands affected. It also at great length described the ditches and levee by giving the starting points, general course and termini. That is all the statute requires. [Sec. 8319, R. S. 1899.]

Defendant's third contention is that the incorporation of the drainage district is illegal because the record of the county court in the original petition should show that the court found that the proposed levee and drain were necessary or would be useful for the drainage of the lands proposed to be drained thereby for agricultural purposes. The finding of the court upon that point is in the following language: "And it is further found by the court that the establishment of said drainage and levee district in accordance with said petition would be necessary for the drainage and reclamation of the lands in said petition described for agricultural purposes." In our judgment that finding was in substantial compliance with statutory requirement.

The fourth insistence is that the record of the proceedings in the county court does not show that the clerk thereof caused notice to be given, stating when and in what court the petition praying for the organization of the district was filed, the starting

point, route, termini and general description of the proposed work, the boundaries and name of the proposed district, and at what term of court the petitioners would ask for a hearing, as required by section 8320, Revised Statutes 1899. We have searched this record for the notice above-mentioned but failed to find it incorporated therein, consequently we are unable to ascertain what its contents is.

From this it is earnestly contended by counsel for defendant that since the county court was a local court, possessing only limited and inferior jurisdiction, and not proceeding according to the course of the common law, the record thereof should have shown affirmatively all the facts necessary to give it jurisdiction of both the persons and subject-matter of the suit; and, consequently, the failure of the record of the county court to show the contents of the notice under consideration rendered the entire proceeding null and void.

The law of this State is well settled to the effect that records of courts of limited and inferior jurisdiction, not proceeding according to the course of the common law, must show affirmatively all the facts which the statute requires to be stated, in order to give the court jurisdiction of the parties and the subject-matter of the suit. [State v. Metzger, 26 Mo. 65; Hansberger v. Railroad, 43 Mo. 196; Schell v. Leland, 45 Mo. 289.] But that law, like most laws, has its well-defined limitations and exceptions; and one of the exceptions is this—that where such court, or a mere ministerial board for that matter, possesses under the law jurisdiction of a certain class of cases, and is required to find the existence of certain facts *in pais* in order to acquire jurisdiction of a particular case belonging to that class, the law will presume, in a collateral attack upon the judgment, that such facts did exist, and that such court or board passed upon them, as required by the statute. [State v. Dugan,

110 Mo. 138; Lingo v. Burford, 112 Mo. 149.] The numerous cases cited and relied upon by counsel for defendant as sustaining his position are cases where the question was raised on appeal from the judgment rendered and not by collateral attack thereon, or where the court had no jurisdiction of the class of cases to which the one on trial belonged. In either of which the rule contended for by defendant applies without exception. We must therefore hold, in the absence of a showing to the contrary, that the recitals of the notice were in substantial conformity to the requirements of the statute.

Defendant's fifth objection questions the validity of the commissioners' report, because it fails to state the aggregate amount of injuries that all of the lands affected would sustain by reason of the proposed work, as required by the statute. It is true the report does not state the aggregate amount of all the damages that would be done, yet it does state separately, in express terms, the amount each tract of land would sustain by reason of the proposed improvements. In order to ascertain the aggregate of all the damages, the court or jury would be only required to add up the separate awards of damages. The law is, that is considered certain which can be made certain from the face of the record. If we apply that maxim to this case, then there is no merit left in defendant's contention.

The defendant's sixth objection assails the legality of the commissioners' report for failing to state whether the proposed district, as set out in the petition filed in the county court, would embrace all the lands that might be damaged or benefited by the proposed work, or to state what additional lands would be benefited or damaged and the amounts of each, in the same manner as though such lands were embraced in said petition. It is true, as contended by counsel for defendant, the report of the commissioners

does not state whether or not the proposed district would embrace all of the land which would be damaged or benefited by the proposed improvements; but it does state that the district embraced 3,500 acres of land, giving the names of the various owners thereof, all of which could be reclaimed and protected from overflow and drained by the construction of the proposed levees and digging the proposed ditches. While this statement falls short of the statutory requirement, yet under the liberal amendments authorized by section 8331 of the statute, which, in express terms, directs the court to investigate the report and evidence touching the matters and things therein stated, and to modify it if found to be inaccurate or insufficient "in any respect," the most that could be claimed would be an irregularity and not a jurisdictional question. But even if jurisdictional, it was adjudicated and determined by the judgment of the county court incorporating the drainage district. This conclusion is fully sustained by the authorities cited in the first paragraph of this opinion.

The seventh objection presented against the report of the commissioners is only a different mode of presenting the same objection stated by counsel for defendant in their third and sixth objections thereto. What we said there is equally applicable to this objection and fully disposes of it.

The eighth objection urged against the report is its alleged failure to state where the starting point, route and terminus of the proposed levee were, and whether the starting point, route and terminus of the proposed district and the proposed locations thereof were in all respects proper and feasible. This contention is not borne out by the record. The report states that "the plan of improvement as specified therein is entirely feasible," and with great particularity the plans are clearly and specifically stated upon all points, as required by section 8326.

The ninth objection goes to the alleged failure of the report of the commissioners and the findings of the court to fix the boundaries of the district, and to state the starting point, route and terminus of the levee and drainage district. The substance of this objection is covered by some of the others previously presented and determined. We might add that it seems clear to us that when this entire record is read and considered together, learned counsel for defendant entirely misconceived what the record discloses. While many of the allegations of the petition filed with the county court praying for the incorporation of the drainage company, and some of the findings of the commissioners as stated in their report, are not in the language of the statute, yet by a careful reading of them it will be clearly seen that they are in substantial compliance therewith, and that is all the law requires.

What we have here said regarding the petition filed with the county court, praying for a judgment incorporating the Cap-Au-Gris Drainage and Levee District, the appointment of commissioners, their report to the county court, and the judgment thereof incorporating the district, applies with equal force to the first assessment of benefits and damages received and sustained by the land affected by the proposed work, for the reason that the assessment was asked for in the same petition, was made by the report, and the same was confirmed by the same judgment of the county court, which incorporated the district. The judgment is an entirety and is final and conclusive in all of its parts.

II. The tenth, eleventh and twelfth assignments of error presented by counsel for defendant relate to the action of the trial court in upholding the action of the commissioners in contracting an indebtedness of $10,000 or $11,000, expended in constructing the

levees and drains in question, over and above the first assessment made by the county court in making the so-called second assessment mentioned in the pleadings and evidence. Those contentions are so closely connected with each other, we will treat and dispose of all of them together.

Let it be conceded, yet we do not decide the question, that the commissioners acted outside of and beyond the scope of their authority in creating said indebtedness, still we are unable to see from this record how the defendant can question that matter at this late date. The supplemental petition of the commissioners asking for the so-called second levy recited the fact that they had incurred the indebtedness mentioned and had expended the money in constructing the drainage system, and asked for an additional assessment with which to pay that indebtedness and for certain other things mentioned in the petition. It is the contention of counsel for plaintiff, if we correctly understand their position, the right of the commissioners to create the indebtedness has been adjudicated by a court of competent jurisdiction, and it cannot be again tried in this case.

Section 8337, Revised Statutes 1899, in express terms, authorizes the commissioners to ask for a further or supplemental assessment when the court is satisfied that the first is insufficient to complete the work undertaken. The commissioners filed such a petition before the county court and asked for the supplemental assessment with which to liquidate and pay off said indebtedness. The defendant and others appeared in court and filed a remonstrance protesting against making the supplemental assessment. A trial was had upon the issues thus joined which resulted in favor of the commissioners and a judgment making the assessment prayed for. From that judgment an appeal was duly taken to the circuit court, where a trial was had *de novo,* which again resulted in a finding

for the commissioners and a judgment confirming the
assessment theretofore made by the county court.
This latter judgment was not appealed from but stands
in full force and effect. If that is a valid judgment
then all the issues involved there were adjudicated
and are not subject to review in this case.

The validity of that judgment is assailed by
counsel for defendant for the reason assigned, that
it was rendered without notice to their client. It is
conceded by counsel for plaintiff that defendant was
not notified of the fact that the petition asking for
the second assessment had been filed in the county
court, or that a trial would be had thereon, without
it can be successfully maintained that when he entered
his appearance in court, by petitioning the court in
the first instance to incorporate the district and order
the improvements made, he was in court at all times
and for all purposes until the case was fully and
finally disposed of. To be a little more specific as
to the position and contentions of opposing counsel:

Counsel for defendant contends that the second
assessment is invalid, null and void, for the reason
that he was not notified of the proceedings which re-
sulted in making the assessment, and that the judg-
ment of the county court making the same, and the
judgment of the circuit court confirming that of the
county court, are also null and void, notwithstanding
the fact that section 8337 authorized the county court
to make assessment "without notice" to the land-
owners. That section of the statute is assailed as
being unconstitutional because it authorizes the tak-
ing of property without due process of law.

While upon the other hand, counsel for plaintiff
insist that when defendant entered his appearance
by signing the petition asking the county court to
have the improvements made, he was in court for all
purposes and remained there as long as the court had
any duties to perform in the case, and until it was

finally disposed of; that being in court the law required him to take notice of every step taken, order made and judgment entered by the court, just as one is required to do in any ordinary case pending in the county or circuit court. They also insist that the real and only true assessment of benefits recommended by the commissioners and made by the court is the one stating that the land would be benefited from $25 to $30 per acre by the proposed improvements, and that the so-called first and second assessments are but the orders of the court, ordering the landowners to pay over to the commissioners a first and second estimate or installment of the benefits previously assessed.

In our judgment counsel for plaintiff have correctly construed said article 5. It requires a petition to be filed with the county court, signed by the landowners, praying for a judgment of incorporation of the drainage company, and requiring certain things to be stated therein, among others, that notice shall be given to all owners of lands affected, that commissioners should be appointed to view the premises and report to the court certain things, among others, the amount of the benefits the lands would receive, and the amount of damages, if any, they would sustain in consequence of the proposed improvements, and the probable cost of the improvements. That in pursuance thereof commissioners were appointed; that they viewed the premises and found and reported that there were 3,500 acres of land which could be reclaimed by the construction of the proposed levees and ditches at a probable cost of $12,247.17, and found and reported that said 3,500 acres of land would be benefited from $25 to $30 per acre, and that the damages were $——, an inconsiderable sum, far less than the aggregate amount of the benefits which were from $87,500 to $105,000, and far below the sums of the

two assessments, which aggregate the sum of $23,146.90.

This view is borne out and strengthened by section 8337, which provides that upon a supplemental report being filed the court may enter an order making the supplemental assessment *without notice* to the landowners affected thereby. The Legislature evidently understood that the landowners were in court at all stages of the procedure, and for that reason thought and provided by said section 8337 that the subsequent levy should be made without notice to them, thereby saving time, cost and expense.

And this view is again reinforced and strengthened by the fact that the article provides that in the first instance the commissioners should fix the maximum amount of benefits each tract of land would receive by the proposed improvements and the aggregate amount thereof, and to state the probable cost of the improvements.

Under this view of article 5, not only was defendant in court all the time the proceedings were pending, but it is also true that all the benefits were assessed in the first instance, which was $25 to $30 upon each and every acre of land embraced within the district, and section 8337 authorized the court, upon the filing of the second report by the commissioners, if the first installment of the assessment was not sufficient to complete the work, then to order a supplemental installment to be paid out of the benefits previously assessed against the property. In this manner installment after installment might be ordered paid until all of the benefits assessed against the lands would be exhausted and paid by the landowners. The very object and purpose of the Legislature, in having the maximum amount of benefits assessed in the first instance, and then providing that they should be paid on estimates or in installments, was for the benefit and protection of the landowner. In that manner no

more tax would be collected than would be necessary to complete the work, while if the landowners had been required to pay all the benefits assessed in the first instance, then a sum of money far in excess of the requirements of the improvements would be paid over and collected by them. In this particular case the record shows the amount of the benefits were three or four times as large as was the actual cost of completing the work. By this mode of assessing the maximum benefits in the first instance and collecting them by installments, or by supplemental assessment, if you so please to call them, which mean one and the same thing, as the commissioners needed the money to prosecute the work, the landowners have been saved not less than $65,000, more than double the amount the entire work cost. This $65,000 represents the net increased value of the lands embraced within the district, and that is the motive which induced the owners thereof to petition the court to have the work done.

It is apparent from the face of this record that plaintiff and his counsel took this same view of the law while the case was pending in the county court, for when the commissioners filed their petition for the supplemental assessment, defendant appeared without notice, filed a remonstrance thereto, and thereby tendered issue to the court for trial, one of which questioned the validity of the indebtedness before mentioned.

A trial was had upon the issues, which resulted adversely to defendant, and from that judgment an appeal was taken to the circuit court, where a trial *de novo* was had, which again resulted in a judgment against him and in favor of the assessment. If he and his learned counsel did not consider themselves in court at that time, why then did he and they so vigorously oppose the assessment in both of those courts?

We must, therefore, hold that defendant had his

day in court, and having availed himself of the hearing there accorded him, he will not now be heard to say, either in law or fact, that the assessment complained of was invalid or deprived him of his property without due process of law; nor that his property was taken for public use without just compensation, for the record discloses that the benefits received by him by way of improvements are far in excess of the cost of the improvements.

The conclusions above reached also dispose of the twentieth and twenty-first assignments.

III.   The thirteenth, fourteenth, fifteenth, sixteenth, seventeenth, eighteenth and nineteenth assignments presented by counsel for defendant regard the regularity of the entry, extension and certificate of the tax assessments upon the tax-books and back tax-books of the county, and the regularity of the certificate of authenticity of the county clerk attached thereto.

At an early date in this State, under the statutes then in force, some of the objections here urged by defendant might have been held valid, but the more liberal statutes of recent years and the decisions of this court construing them deprive these various assignments of all merit and reduce them to the rank of technical objections.

Sections 9179, 9202 and 9323, Revised Statutes 1899, read as follows:

Section 9179:  "No assessment of property or charges for taxes thereon shall be considered illegal on account of any informality in making the assessment, or in the tax lists; or on account of the assessments not being made or completed within the time required by law."

Section 9202:  "Any failure to deliver the assessor's or collector's books within the time required by this chapter shall in no way affect the validity

of the assessment and levy of taxes, but in all cases of such failure the assessment and levy of taxes shall be held to be as valid and binding as if said book had been delivered at or within the time required by this chapter.''

Section 9323: ''Any failure to make or complete the 'back-tax books' within the time required by the three preceding sections, or any informality in making said 'back-tax books,' shall in no way affect the validity of the same.''

Under these sections this court has many times held that when an assessor makes out his assessor's books, jurisdiction attaches and the rest of the proceedings are only directory.

And in the case of State ex rel. v. Phillips, 137 Mo. 259, this court held that, under Revised Statutes 1889, sections 7563, 7584 and 7702, which are the same as sections 9179, 9209 and 9323, Revised Statutes 1899, mere informalities in making assessments of property or charges for taxes thereon, or in the tax lists, or on account of the assessments not being made or completed in the time required by law, and that no informality in making the back tax-book, should affect its validity, and were not defenses in an action to collect back taxes. To the same effect are the following cases: State ex rel. v. Harper, 83 Mo. 670; State ex rel. v. Bank, 120 Mo. 161; Thomas v. Chapin, 116 Mo. 396; State ex rel. v. Hurt, 113 Mo. 90; State ex rel. v. Hutchinson, 116 Mo. 399; State ex rel. v. Bank, 144 Mo. 381; R. S. 1899, secs. 9179, 9329; State ex rel. v. Carr, 178 Mo. 229.

The broad principle announced and underlying all of these cases is, that when a valid assessment is shown, its entry upon the tax-book and the failure of the property-owner to pay it when due, a good cause of action is made out, and that all other requirements and proceedings are mere formalities and intended to assist and facilitate the collection of the taxes, and are

not intended to be stumbling blocks and hindrances thrown in the way of a speedy collection of them.

In addition to the curative statutes before mentioned, section 8344, Revised Statutes 1899, provides that the provisions of said article 5 should be liberally construed in order to promote the objects and purposes of the enactment.

Under these liberal provisions of our statutes we must hold that none of the errors assigned and discussed in this paragraph of the opinion are well taken.

IV. It is next insisted by defendant that plaintiff, the collector of revenues of Lincoln county, has no authority to maintain this suit.

Counsel cite no authority in support of that proposition, while counsel for plaintiff cites us to sections 8332 and 9194, Revised Statutes 1899.

The former section provides that, "If assessments are not paid when due, the commissioners shall certify the same to the county clerk of the county in which the delinquent lands are situated as due and unpaid for such work, and the county clerk shall enter the same on the tax list for such county next thereafter to be made against the lands benefited, and the same shall be collected in the same manner that State, county and township taxes are collected, excepting only that the personal property of individuals shall not be liable to seizure and sale therefor."

Sections 9194, 9291, 9302 and 9309, Revised Statutes 1899, read as follows:

Section 9194: "As soon as the assessor's book shall be corrected and adjusted, the clerk of the county court, except in St. Louis city, shall, within ninety days thereafter, make a fair copy thereof, with the taxes extended therein, authenticated by the seal of the court, for the use of the collector; and where the assessor's book is in two or more volumes, such copy thereof shall be divided into volumes in the same man-

ner and designated by the same numbers, and each volume shall be authenticated by the clerk with the seal of the court. And upon a failure to make out and deliver to the collector such copy in the time specified, the county court shall deduct twenty per centum from the amount of fees which may be due the clerk for making such copy, and such copy of the assessor's book shall be called the 'Tax Book.' ''

Section 9291: ''All real estate upon which the taxes remain unpaid on the first day of January, annually, shall be deemed delinquent, and the said county collector shall proceed to enforce the lien of the State thereon, as required by this chapter; and any failure to properly return the delinquent list, as required by this chapter, shall in no way affect the validity of the assessment and levy of taxes. . . .''

Section 9302: ''If, on the first day of January, 1880, any of said lands or town lots contained in said 'back tax-book' remain unredeemed, it shall be the duty of the collector to proceed to enforce the payment of the taxes charged against such tract or lot, by suit in the courts of competent jurisdiction of the county where the real estate is situated, which said courts shall have jurisdiction without regard to the amount sued on, to enforce the lien of the State or such cities. . . .'' .

Section 9309: ''Fees shall be allowed for services rendered under the provisions of this chapter as follows: To the collector, except in such cities, four per cent on all sums collected; in such cities two per cent on all sums collected—such per centum to be taxed as costs and collected from the party redeeming. To the county clerk, for making the 'back-tax book,' twenty-five cents per tract, to be taxed as costs and collected from the party redeeming such tract. To the circuit clerk, justice of the peace, sheriff and printer, such fees as are allowed by law for like services in civil cases,

216 Sup—19

which shall be taxed as costs in the case: *Provided,* that in no case shall the State, county or city be liable for any such costs, nor shall the county court or State Auditor allow any claim for any costs incurred by the provisions of this chapter.''

From reading these statutes it is clearly seen that they authorize and empower the plaintiff to institute and maintain this suit, and it has been so decided in the case of State ex rel. v. Angert, 127 Mo. 456.

We must, therefore, decide this contention against defendant.

V. Having disposed of defendant's assignments of error, we now come to the consideration of those presented by counsel for plaintiff.

The trial court found that the taxes sued for in the first three counts of the petition were barred by the Statute of Limitations, and, consequently, entered judgment for defendant thereon.

As disclosed by the record, the first assessment was made due and payable on the first day of January, 1895, and the second on July 1st of the same year. This suit was begun December 28, 1900. Section 8332 provides that ''if assessments are not paid when due, the commissioners shall certify the same to the county clerk . . . as due and unpaid,'' and that the latter shall enter the same in the tax-book to be made against the lands benefited, and the same shall be collected the same as State and county taxes are collected. That section is a part of article 5 which authorizes such improvements to be made.

The record also shows that the delinquent tax list mentioned in section 8332 was not certified to the county clerk until July 15, 1896. Section 9291 provides that all real estate upon which the taxes remain unpaid on the first day of January, annually, after they are payable, shall be deemed delinquent,

and the collector shall proceed to enforce the lien as provided by that chapter, and that any failure.to properly return the delinquent list shall in no way affect the validity of the assessment and levy.

According to these statutes, the taxes mentioned in the first two counts became due January 1, 1895, but did not become delinquent until January 1, 1896, and the second assessment not being due until July 1, 1895, would not become delinquent until January 1, 1896.

And section 9313 provides that "no action for the recovery of taxes against real estate shall be commenced, had or maintained unless commenced within five years of delinquency."

From reading the sections of the statute above mentioned it will be seen that they do not authorize suit to be brought to recover taxes at any time after they become due and payable, but only after the date they should have been returned delinquent, as required by law, can suit be brought for the recovery thereof.

In the case of State ex rel. v. Carr, 178 Mo. 229, this court held that suits for recovery of taxes are not barred if begun within five years after they are returned delinquent. That case also holds, in the language of the statute, that taxes are not delinquent until after the first day of January following the year in which they become due and payable. Under that decision, as before stated, the taxes due January 1st and July 1, 1895, did not become delinquent until January 1, 1896, and those due January 1, 1896, did not become due until January 1, 1897.

VI. The court also held that assessment number 3, due January 1, 1896, was also barred by the Statute of Limitations.

That ruling of the court is based upon the follow-

ing recital contained in the findings of fact made and filed in the case, by the court, to-wit:

"The court finds from the evidence in the cause that the original petition in said suits, respectively, of plaintiff v. A. C. Wilson et al., was filed with the clerk of said Lincoln county on the 28th day of December, 1900, but under the facts shown in evidence, said suits cannot be held as having been instituted against A. C. Wilson until the third day of April, 1901, at which date Wilson entered his appearance to said suit."

Counsel for defendant attempted to show that at the time the petition was filed in the office of the circuit clerk, Mr. Avery, one of the counsel for plaintiff, instructed the clerk not to issue summons for the defendant until further notified. But this record is perfectly barren of all evidence tending to prove any such instruction was given by Mr. Avery; but upon the other hand Mr. Avery in unequivocal language testified that he gave no such instruction.

The filing of the petition with the clerk of the court, under the decisions of this court, is the bringing of a suit within the meaning of our code, notwithstanding summons is not issued until after suit was barred. [Lumber Co. v. Wight, 114 Mo. 326; McGrath v. Railroad, 128 Mo. 1.]

We therefore hold that none of the causes of action stated in the various counts of the petition were barred by the Statute of Limitations. Under the undisputed facts of this case, as disclosed by the record, the plaintiff was entitled to recover upon each and all of the counts stated in the petition; and the trial court erred in not so holding.

The judgment rendered against the plaintiff is, therefore, reversed, and the cause remanded, with directions to enter judgment for plaintiff for the taxes as due as stated in all counts of the petition, together

with interest, attorney fees and costs, as is made and provided by statute.

All concur.